JOHN A. JACKSON et al. *v.* A. B. DILWORTH, Secretary of State.

1. INTERNAL IMPROVEMENT FUNDS : SWAMP AND OVERFLOWED LANDS : ACT 15 MARCH, 1852, CH. 16, CONSTRUED.—The Act of the 15th March, 1852, ch. 16, does not authorize the location of scrip, issued under its provisions for the purpose of building levees in the counties of Tunica, De Soto, Coahoma, and Bolivar, on swamp and overflowed lands situated in any other county than those above mentioned.

2. SAME : SAME : ACT 16 MARCH, 1852, CH. 14, CONSTRUED.—By the Act of the 16th March, 1852, ch. 14, a vested right to all the swamp and over-flowed lands situated within the district therein mentioned is granted to the several counties in which they lie, and this right cannot, by the Legislature, be divested out of any of said counties without its assent.

3. SAME : SAME : SAME : VESTED RIGHTS UNDER.—The issuance and sale of scrip by a county under the provisions of the Act of 16th March, 1852, ch. 14, vests in the holder thereof the right to locate it on any of the swamp and overflowed lands in that county not appropriated by the previous location of scrip issued by that county in pursuance of that Act, and the Legislature has no right by a subsequent Act to authorize other scrip to be located in said county, or to ratify illegal locations of such scrip theretofore made in such county.

ERROR to the Circuit Court of Hinds county. Hon. John Watts, judge.

*J. A. P. Campbell* and *George L. Potter*, for plaintiff in error.

*D. Shelton*, for defendant in error.

HANDY, J., delivered the opinion of the court:

This was a petition filed by the plaintiffs in error for a *mandamus*, requiring the defendant in error, as secretary of state, to issue to them a patent for a tract of land lying in Attala county ; and the case presented by the record is as follows:

On the 31st December, 1853, one Thomas Green located scrip for submerged lands issued to Tunica county, upon the land in controversy, and on the same day a patent thereon was issued to him by the secretary of state for the same land, lying in Attala county. This scrip was issued in virtue of the Act of 15th March, 1852, ch. 16, and it was located and the patent issued under the authority of the same Act.

Scrip was issued to Attala county in virtue of the Act of 16th March, 1852, ch. 14; and Jackson and Zollicoffer became the purchasers of a part of said scrip for forty acres, dated 9th December, 1853, and duly indorsed and sold by the commissioner appointed for that purpose by the board of police of Attala county ; and the purchasers indorsed on the said scrip that they had located it on a specified parcel of land, being a part of the same land embraced in the scrip and patent issued to

Green. On the 20th April, 1857, Jackson and Zollicoffer pre- sented this scrip to the secretary 'of state and demanded of him a patent to be issued thereon to them; but the demand was refused, on the ground that a patent for the same land had been previously issued to Green in virtue of the scrip held by him as above stated. And thereupon this action was instituted by the plaintiffs in error.

The rights of the parties depend mainly on the proper con- struction of the Acts of 15th and 16th March, 1852; and the first question to be considered is, whether the Act of 15th March authorizes warrants, issued under the provisions of the thirteenth section of the Act, to the counties therein named, to be located on any submerged lands lying in other counties than those specified and not before located. We must examine the general scope and object of this Act, as well as the language employed in many of its provisions, in determining this ques- tion.

The title of the Act shows its general object to have been " to provide for the construction of a levee upon *the Mississippi river* and for the reclamation of the State and school lands." Its first eleven sections relate to *sales* of the five hundred thousand acres of land donated to the State by the United States, direct- ing how such sales shall be made and the proceeds appro- priated, and that the proceeds of the sale of the first sixty thousand acres shall be applied to the construction of levees in the counties of Tunica, De Soto, Coahoma, and Bolivar, and that the residue be held for internal improvement and appro- priated to that object by the Legislature.

The twelfth, thirteenth, fourteenth, fifteenth, and sixteenth sections relate to providing a fund for the construction of levees in certain counties on the Mississippi river, viz., De Soto, Tunica, Coahoma, Bolivar, Washington, and Issaquena; and prescribing the mode in which the fund shall be used for that purpose. This plan commences, in the Act, with the twelfth section, which very clearly confines it to the counties named, and shows that other counties not named were not to be em- braced in the policy. That section provides that lists and maps of the lands lying in those counties shall be made, showing the

sections and parts of sections of land, which were to constitute the levee fund for the purposes of the Act. This provision does not embrace other counties.

The five following sections plainly have reference to the lands in the counties named, as constituting the fund upon which the levee scrip was to be issued. The thirteenth section provides for issuing scrip to the presidents of the boards of police for the same counties, "to be used in the construction of levees in their respective counties." Various other provisions showing the same intent are contained in that and in the fifteenth section, and finally the seventeenth section provides that "from and after the 1st October, 1853, all of said swamp lands *lying within the counties above named,* which shall remain unappropriated," shall be subject to entry at one dollar per acre.

It is insisted, in behalf of the defendant in error, that the language of the form of the warrant for scrip prescribed by the thirteenth section shows that the warrant was intended to be located upon any of the submerged lands donated to the State by the Act of Congress and not before located under a like certificate, though it did not lie within the counties named in that section.

This view, though rendered plausible by the words of the Act, is not sustained by its spirit shown by the context. The language used is, that the holder of the warrant " is entitled to one quarter section of any land, not before located under certificate of like character, of the submerged lands donated by Congress to the State of Mississippi."

We have above seen that the swamp lands in the particular counties named were intended by the Act to be appropriated as a fund for the construction of levees in those counties. The lands are set apart for the benefit of those counties, and the fund for the construction of levees in them was intended to be derived from those lands. It would be doing great violence to the general purview of these sections of the Act to say that the lands lying in the counties named were subject to location under scrip held by other counties; for not only are these lands set apart for the levee fund of the counties in which they lie, but the form of the certificate entitles the holder to locate it on any

submerged, land not before located " under *certificate of like character*"—that is to say, under one of the warrants authorized by this Act. There were no certificates " of like character" but those authorized by this Act ; and hence the lands were not subject to location but by one of these certificates.

The general words in the form of the warrant contained in the thirteenth section must therefore be controlled by the scope and policy of the whole plan of providing a levee fund for the counties named, as shown by the accompanying sections; and it appears to be clear that the warrant could only be located on submerged lands lying within the counties named in the thirteenth section and not before located under a certificate of like character.

This view of the subject, founded upon the Act itself, is rendered still more manifest when we consider the contemporaneous Acts of the Legislature appropriating and granting to other counties and districts other lands within their limits.

By the Act of 12th March, 1852, ch. 34, the swamp and overflowed lands lying on Pearl river are granted to certain named counties situate on that river ; and by the Act of 3d March, 1852, ch. 45, swamp lands lying on Homochitto and Leaf rivers are granted to the counties situate thereon, for the purpose of improvement of the navigation of those rivers, and of reclaiming the swamp lands overflowed by their waters.

By the Act of 16th March, 1852, ch. 14, the swamp and overflowed lands lying within another specified district, embracing the county of Attala, are appropriated to the reclamation of the lands on the rivers and streams within the district specified, and for the improvement of their navigation, and are " granted to the counties in which they are situated for said purposes."

These several Acts of contemporaneous legislation show clearly that the policy intended was, to set apart to distinct districts a fund, for the separate use of each, to be applied to the purposes of internal improvement set forth in each of the Acts.

This intent is very apparent from the terms employed in the Act of 16th March, 1852.

The first section " appropriates and grants" certain lands "to the counties in which they are situated."

The third section provides that the commissioners appointed by the board of police of each of the counties embraced in the district shall be furnished by the secretary of state with a statement of the number of acres of overflowed *" lands in the county"* in which each of them acts, and that *" said commissioners are authorized to sell and dispose of the scrip for said land,"* and apply the proceeds "to the reclamation of said lands," and to "the improvement of the navigation of the rivers and streams on which said lands are situated."

From these provisions it is not to be doubted but that the lands within the district specified are set apart for the use of the several counties embraced in it, to the exclusion of all right in other counties to locate scrip issued to such other counties upon lands lying within the district.

In opposition to this construction, it is contended, in behalf of the defendant in error, that inasmuch as the fourth section of this Act provides that the scrip issued under it shall be governed in all respects by the provisions of the twelfth, thirteenth, fourteenth, fifteenth, and sixteenth sections of the Act of 15th March, 1852, above mentioned; and since the thirteenth and fifteenth sections of that Act give to the holder of a warrant issued under it the right to locate it on any land, not before located, of the submerged lands donated to the State by Congress—therefore, the same unrestricted right of location exists with reference to the lands granted by the Act of 16th March, and that the location of the warrant from Tunica county upon the land in controversy in Attala county was valid.

But we have above seen that this construction of the Act of 15th March is not tenable; and hence the position here assumed cannot be maintained.

Another ground in support of the location of Green is insisted upon by the counsel for the defendant in error. He contends that the twelfth section of the Act of 1854, ch. 8, recognizes the validity of locations of the scrip issued to counties on the Mississippi river made on lands lying within the interior counties and embraced in the Act of 16th March, 1852. That section

authorizes the secretary of state, on the application of the president of the board of police of any county, to ascertain the number of acres of land that have been located in such county by any swamp-land scrip issued to certain counties on the Mississippi river, or to the State for sale for reimbursement to the internal improvement fund; and, when ascertained, that the secretary shall issue to the proper representative of such county swamp-land scrip, in lieu thereof, to an equal amount upon any of the unappropriated lands remaining in the district appropriated to said counties on the Mississippi river.

It is clear that the grant of the lands, by the Act of 16th March, 1852, to the counties embraced within the provisions of that Act, became a vested right in those counties after the scrip was issued to them; and that any subsequent Act of the Legislature impairing that right was not binding upon any of the counties, unless it was accepted and ratified by such county. And it does not appear by this record that such acceptance took place; or that the provisions of the twelfth section of the Act of 1854 were assented to and adopted by the president of the board of police of Attala county.

But if it be true that the Act was adopted and acted upon by that county, as prescribed in the twelfth section, does that impair the right of the holder of a land-warrant previously issued for that county to locate his warrant on land in that county?

It is manifest that, by the fourth section of the Act of 16th March, 1852, adopting the provisions of the thirteenth section of the Act of 15th March, 1852, and by the terms of his warrant, he became entitled to locate it on land, not previously located by a like warrant, of the submerged lands in Attala county. That right became vested by the issuance of the warrant to the holder, and no act of the president of the board of police could deprive him of it without his assent.

It appears that the warrant under which the plaintiffs in error claim bears date 9th December, 1853, and it must be presumed to have been issued on that day. If they were the holders of it before the Act of 1854 was adopted by the board of police of Attala county, their rights were not affected by that adoption. But if that Act was accepted and acted upon by the president

of the board of police of that county, under the provisions of the twelfth section of the Act, that would operate as a ratification of the location made by Green upon the land in controversy, and the title thereby acquired would prevail over the right of the plaintiffs in error, unless they were the holders of the warrant under which they claim before the adoption of the Act of 1854 by the board of police of Attala county.

As the case is presented by the record before us, we must consider it as if no such adoption had taken place; for there is nothing to show it in the record. The rights of the parties are to be determined, then, as they stand under the provisions of the Acts of 15th and 16th March, 1852; and so considered, we are of opinion that Green's location was invalid, and that the plaintiffs in error were entitled to the patent from the secretary of state.

The judgment must be reversed, and a judgment rendered here directing the secretary of state to issue a patent to the plaintiffs in error for the land in controversy.