JOSHUA GREEN v. JOHN P. IRVING.

1. COVENANT OF GENERAL WARRANTY OF TITLE. *Breach. Conveyance by State of title paramount.*
 A sale of land by the State, while holding the paramount title, is such hostile assertion thereof that persons in possession under defective titles can abandon as upon eviction and sue their covenantors. CAMPBELL, J., dissented.

2. SAME. *Contiguous tract of wild-land. Occupation of part. Eviction.*
 Actual occupation of a portion is legal occupation of all of an unbroken tract of wild-land embraced in a deed; but ouster from the part actually occupied is not eviction from the constructive possession of the rest.

3. SAME. *Constructive eviction. Suit for purchase-money.*
 The covenantee by deed with general warranty may yield to an outstanding paramount title, when called upon, without waiting to be sued, but cannot, without assertion of such title, abandon and demand a return of the purchase-money.

4. SAME. *Buying in paramount title. Assumpsit.*
 Without hostile assertion of the title paramount, such covenantee who buys it in can maintain assumpsit for its purchase-money, but cannot sue in covenant on the warranty. *Kirkpatrick v. Miller*, 50 Miss. 521.

5. SAME. *Breach. Conveyance by vendor.*
 A conveyance by the vendor is such hostile assertion, but one by the vendor's vendor is not, and generally a sale by the true owner is not such assertion. CAMPBELL, J., dissented from first proposition.

6. COVENANTS. *Breaches. Technical eviction. Wild-land.*
   The covenants of seisin, quiet enjoyment, freedom from incumbrances and warranty discussed, breaches defined, and the doctrine of presumed possession and technical eviction applied to a covenant of warranty of title to wild-land.

7. BILL OF EXCEPTIONS. *Its object.*
   A bill of exceptions is part of the record only to certify the facts embodied therein to the Appellate Court.

8. SAME. *When evidence.*
   If the party introducing the record has used the bill, the other party may do likewise, *aliter non. Shotwell* v. *Hamblin,* 23 Miss. 156, restricted.

9. SAME. *For what purposes.*
   The bill in a record introduced can be used to show the character of the former action or defence, or refresh a witness's memory as to transactions or testimony on that trial, but not to prove facts essential to the case in hand.

ERROR to the Circuit Court of Hinds County.

Hon. GEORGE F. BROWN, Judge.

*Shelton & Shelton,* for the plaintiff in error, contended, in an elaborate brief, that Irving's abandonment was purely voluntary and matter of choice, that there was no eviction nor ouster, and nothing equivalent to either. At the time of the abandonment no adverse claim was asserted. There was no compulsion in law or fact. The State asserted no claim to the land. The first adverse claims asserted were the entries made after the abandonment. The Statute of Limitations had run against all outstanding pretences of title. Upon such voluntary abandonment Irving cannot recover on Green's warranty; and he should have had judgment only for the quarter-section. The counsel cited in their argument 35 Miss. 506; 37 Miss. 17, 155; 12 S. & M. 478; 8 S. & M. 727; 31 Miss. 537; 4 Kent Com. 471; 40 Miss. 785; 47 Miss. 644; 43 Miss. 383; 13 S. & M. 580; Sedgwick on Damages, 152, 153, 158; 4 T. R. 621; 3 Wash. on Real Prop. 403; 11 S. & M. 206; 17 Ohio, 71; 5 Iowa, 287; 5 Hill, 599; 4 Mass. 433; *Waldron* v. *M' Carty,* 3 Johns. 471; Code 1857, p. 398, art. 1; 7 Wheat. 335; 5 Pet. 440; Angell on Lim. §§ 398, 400; 1 Rice Eq. 373; 3 Greenl. 315; 6 Pet. 513; 10 Pet. 442; 11 Pet. 53; 10 S. & R. 303; 3 N. H. 268; 10 Wall. 142; 15 Vt. 672; 25 Mo. 197; 5 Dana,

232; 4 Mason, 330; 3 Ired. 578; 7 Jones, 430; 24 Texas, 582.

*Harris & George*, for the defendant in error, filed a written argument, citing,

1. On the question whether there was a sufficient eviction of the lands sold other than the quarter-section, *Jackson* v. *Dilworth*, 39 Miss. 772; *Clements* v. *Anderson*, 46 Miss. 581; Rawle on Covenants of Title, 216 *et seq.*

2. As to whether the title of Irving had become perfect by the Statute of Limitations, *Alexander* v. *Polk*, 39 Miss. 737; *Huntington* v. *Allen*, 44 Miss. 654; *Ford* v. *Wilson*, 35 Miss. 490; Angell on Lim. § 403; *Jackson* v. *Woodruff*, 1 Cow. 276, 286; *Ten Eyck* v. *Richards*, 6 Cow. 617, 623; *Miller* v. *Dow*, 1 Root (Conn.), 412; *Miller* v. *Shaw*, 7 S. & R. 143; *Jackson* v. *Vermilyea*, 6 Cow. 677.

CHALMERS, J., delivered the opinion of the court.

John P. Irving brought this suit against Joshua Green upon a covenant of general warranty, contained in the deed by which Green had conveyed two thousand and fifty acres of land situated in Attala County to Anderson and Irving, by whom it had been conveyed to the plaintiff. He had judgment in the court below for the purchase-money and interest; from which Green brought up the case, and assigns for error that the judgment should not have been for the whole amount of the purchase-money, but only for so much of it as constituted the consideration of one hundred and sixty acres, from which portion alone the plaintiff had been evicted by title paramount.

The history of the transaction is as follows: The land is a part of the five hundred thousand acres of swamp and overflowed land donated by Congress to the State in 1850 for internal improvement purposes. A patent thereto was issued by the State to Green in 1853; and he subsequently conveyed, under covenant of general warranty, to Anderson and Irving, who conveyed to the plaintiff, John P. Irving. Subsequently one Clements obtained a patent from the State to one quarter-section of it, and brought ejectment therefor against Irving. The case came to this court, where it was held that Green's

patent was void and Clements's valid. *Clements* v. *Anderson,* 46 Miss. 581. Green had been called in warranty by Irving, or had been notified of the pendency of the suit, and had employed counsel to defend it both in the Circuit and Supreme Courts. The effect of the decision rendered here was to declare Green's title invalid to the whole tract, though only a small part of it was actually involved in that litigation. Thereupon Irving, having been formally evicted from the quarter-section recovered by Clements, abandoned the whole tract, and brought this suit for the purchase-money and his costs in the former litigation. It is conceded, as before remarked, that he is entitled to judgment for the purchase-money of the portion from which he was evicted, and for the costs of defending that suit. The question is as to his right to recover any thing beyond that amount. An attempt was made to show that by understanding between the parties it was impliedly conceded or agreed that the litigation over the quarter-section should be accepted as decisive of the whole, and that, therefore, the abandonment of the entire tract by Irving was sanctioned or acquiesced in by Green, because, as alleged, when the latter was called upon to refund the purchase-money with interest, he objected only to the payment of interest, thereby acknowledging a liability for and willingness to pay the principal. We think the testimony establishes that the demand made upon him was for the entire purchase-money, and not alone for that portion of it which had been received as the price of the quarter-section, as is contended by him; but it is, we think, equally manifest that he understood it to be for the latter alone; and under these circumstances he cannot be held to have waived any legal defences he may have had to a suit for the whole amount. There is no pretence of an assent on his part to an entire abandonment of the land other than that attempted to be drawn from this negotiation about refunding the purchase-money. It is argued, however, that the eviction from the quarter-section was an eviction from the whole, because the land was all wild and unoccupied woodland, except a small enclosure on the quarter-section; and that if an occupation of all the land embraced in the deed was effected by an occupation of this portion, so an eviction from the whole must be produced by an eviction from this occupied part.

It is well settled that actual occupation of a portion is legal occupation of all the land embraced in a deed, provided it be an unbroken contiguous tract.   Does it, therefore, follow that eviction from the portion occupied is eviction from the whole ? Manifestly not.   The portion from which the eviction has been suffered may be the only portion to which the title is defective, or, if the same defect exists as to all, the true owner may never claim the remainder.   There having been, then, no legal eviction from any portion of the land save from the quarter-section, is there any principle of law, or are there any circumstances in the case, which will uphold a recovery from the covenantor of any thing more than the price of that portion from which the covenantee was actually evicted?   In this inquiry it will be borne in mind that there were no special covenants in the deed, either of seisin or of right to convey, or against incumbrances.   There were, in short, no covenants except the general covenant of warranty of title, which has in our State become to so great an extent the only covenant usually inserted in conveyances of land, that we have almost lost sight of the importance under some circumstances of the special covenants referred to.   The same thing seems to be common in other States, since the great Georgia jurist, Lumpkin, remarked, in *Leary* v. *Durham*, 4 Ga. 593, 601, that, in the course of an active practice of more than a quarter of a century, he had never seen a deed with the special covenants usually found in conveyances in England and the more northern States of the Union.

Under this covenant it was long held, and is perhaps still held, in England that no recovery of the purchase-money could be had unless there had been actual eviction or ouster under title paramount ; and in the earlier cases it was considered that this eviction must be by judicial process, though it is believed that the requirement of judicial proceedings has not existed even in England for many years.   *Foster* v. *Pierson*, 4 T. R. 617.   Since the case of *Hamilton* v. *Cutts*, 4 Mass. 349, 352, it has been quite universally held in this country that no eviction by legal process was necessary ; and Rawle, in his excellent work on Covenants for Title, 242, remarks that no class of cases entitled to rank as authority can now be found to the contrary.

In consonance with and in furtherance of this doctrine, it is now settled that the covenantee may yield to an outstanding paramount title when called upon to do so, without waiting to be sued; and in most of the States he is permitted to buy in an outstanding paramount title without eviction or ouster, though in this State it is held that, while in such case he may maintain assumpsit for the money expended in the purchase of the outstanding title, he cannot sue in covenant for a breach of warranty. *Kirkpatrick* v. *Miller*, 50 Miss. 521.

It may be laid down, however, as a rule without exception, so far as we have been able to find, that, to authorize a suit by the covenantee against the covenantor for breach of a general warranty of title, there must have been some hostile assertion of the paramount title to which possession was yielded, or which was bought in. It is not necessary that a suit shall have been instituted, or perhaps even threatened, but it is essential that the true owner shall have given notice in some way of his intention to assert his claim. The covenantee cannot, merely because he has ascertained that some other person holds a title superior to his own, abandon that possession which he received from the covenantor, and demand a return of the purchase-money. It is not sufficient that he shall be satisfied that the outstanding title is the true one, and if asserted cannot be resisted; because, in point of fact, it may never be asserted, or, if asserted in the future, the flow of time may have so ripened his possession that he can successfully combat it. Good faith, therefore, to his vendor requires that he shall stand his ground until in some way he is called upon to surrender. This principle, as a general proposition, will not be denied, since it is believed that no case can be found to the contrary where the point was distinctly raised. We will not cite authorities in support of it, except to say that the principle is asserted and some of the cases collated in Rawle on Covenants for Title, 249 *et seq.*, and a larger number will be found under the general title " Covenants," subdivision " General Warranty," 4 Abbott's U. S. Dig. N. s. 254 *et seq.*

The circumstances relied on to take this case out of the operation of the rule, besides those already referred to, are to be derived, if at all, from the following facts: As soon as the

decision by this court, which made apparent the invalidity of Green's patent, and showed the title to be in the State, was rendered, the plaintiff, as testified by himself, abandoned the land, by ceasing to pay taxes on it, or to give himself any further concern about it. Apart from the cessation in the payment of taxes, this abandonment must have been purely mental, since after the eviction from the Clements quarter there was no tangible possession to be abandoned. There was at the time of this mental abandonment and cessation of tax-paying no one claiming any outstanding paper title to any portion of the land save the State; but before the institution of this suit the greater part of it had been entered by other parties, who had received patents therefor. It is not shown by the record that any of these patentees ever gave token in any manner of a desire or intention to take possession, or ever made any demand therefor, or asserted a right thereto in any manner, save by the entry at the secretary of state's office and by the recording of their patents.

It is argued that a different rule as to ouster will obtain where the State is the paramount owner, from that which exists in case of a private person; because the State is always, constructively, in possession of her lands, and intruders thereon are trespassers. The rule, we think, may be different in States which have not subjected themselves to the operation of the Statute of Limitations; but inasmuch as against the State of Mississippi a perfect title may be acquired by lapse of time, so that a mere trespasser, by an occupation of the public domain sufficiently prolonged to toll the right of entry, will defeat the State's title, we can see no principle upon which to rest the distinction here. While it is true that the State is always constructively in possession of its land, it is also true, with regard to private persons, that possession constructively follows the true title.

It was held in *Glenn* v. *Thistle*, 23 Miss. 42, that a party in possession of land belonging to the United States, under an invalid deed, might voluntarily abandon it without eviction or hostile demand, and maintain suit against his covenantor as upon a legal eviction or ouster; and this, we may remark, is the only case we have been able to find where the right of the

covenantee to maintain an action was sustained without proof of some assertion of paramount title by the true owner. The decision was rested upon the ground that the United States government was not compelled to resort to the courts for the dispossession of intruders upon her lands; but, under the acts of Congress of 1807 and 1833, the President might direct the marshal to eject intruders therefrom, and, if necessary therefor, might furnish him with a military force. It is to be observed, also, that the United States is not bound by statutes of limitation. We conclude, therefore, that a covenantee can no more maintain a suit against his covenantor, where he has abandoned in deference to a paramount title residing in the State, which has not been hostilely asserted, than where the owner of the true title is a private individual. *Patton* v. *McFarlane*, 3 Penn. 419.

Did the issuance of patents by the State to other persons constitute such hostile assertion as justified the abandonment? It will be observed that, according to the plaintiff's own statement, his abandonment preceded the issuance of the patents, and therefore cannot be said to have been caused by it; but inasmuch as his abandonment was rather mental than actual, and as the patents were issued before the bringing of this suit, we have thought proper to consider the question. If he might not yield without demand to the title of the State, it is impossible to see how his condition is altered by the mere sale by the State to a third person, unless such third person notifies him in some way of his intention to assert the title. The dealings between the State and her patentee are, as to him, *res inter alios acta*, by which he is in no manner affected, as was declared in a case to be presently cited. If I may not abandon, because I ascertain that a citizen of New York is the true owner of the land which has been sold me, it is impossible to see how I acquire a right to do so because my neighbor has purchased this title, unless in some manner my neighbor signifies an intention to assert his newly acquired rights. It may be said, however, that although these principles are correct as applicable to land which is susceptible of actual occupation, a different rule should prevail as to wild-lands: that, as to these, no length of constructive possession will

ripen an imperfect into a perfect title; that, inasmuch as the owner of the defective title is not in possession, it should not be deemed essential that the true owner should make any demand upon him, or that the true owner should be required to signify his assertion of title by taking possession of a wilderness, or by bringing suit against a party who is not interfering with his rights.

These considerations seem cogent and persuasive, and we confess that we have found it difficult to resist them. It will be found, however, that to yield to them will be to do violence to the immemorial principles underlying and governing the covenant of warranty of title, and practically to abolish the distinction between that covenant and those of seisin and of right to convey. These latter covenants are personal, *in presenti*, and do not run with the land. They are broken as soon as made, if the covenantor is not seised according to their stipulations; and suit may be at once instituted for the breach. The covenants of warranty of title and for quiet enjoyment, on the contrary, necessarily operate *in futuro*, and are never broken as soon as made, except when, at the date of the conveyance, the premises are in the actual adverse possession of the true owner. Thus it was held in an elaborately considered case in Illinois, that where the covenantee was unable to obtain possession by ejectment in consequence of a broken link in his chain of title, he could not maintain an action against his covenantor, because the parties in possession of the land were intruders, and not the true owners, and it was said that, before he could sustain his suit, he must show that his enjoyment had been prevented by the holder of the paramount title, — there must be a concurrence of disturbance and of paramount title. *Beebe* v. *Swartwout*, 3 Gilman, 162.

The obligation in a general warranty of title is not that the covenantor is the true owner, or that he is seised in fee with right to convey, but that he will defend and protect the covenantee against the rightful claims of all persons thereafter asserted. If the true owner is in actual possession at the time, there is, *eo instanti*, a breach of the covenant, because there is an instantaneous assertion by him of his title paramount; but, if he is not in possession, there must be, in some manner, an

assertion or demand on his part before there can be said to be a breach of the covenants entered into by him who assumed to convey an adverse title.     The necessity for some alteration, actual or threatened, in the position of the covenantee, before he can assign a breach, springs out of the *future* character of the covenant, and is equally essential whether the lands conveyed be habitable or a wilderness.     In neither event can the vendee be allowed to say, I have discovered an outstanding paramount title, and, although I have not been threatened by it, I abandon all claim to the land, and demand damages for a broken covenant.

Another reason, more technical, but perhaps not less satisfactory, exists for requiring some hostile assertion of the paramount title to wild-lands before the vendee can maintain suit upon the covenant of general warranty.     By the deed which he receives he is vested with the possession of his vendor.     In England, where livery of seisin was anciently required to convey possession, this effect was accomplished by deed of bargain and sale, by virtue of the Statute of Uses, which drew the possession to the use.     Whenever, therefore, actual possession upon the part of the vendee was necessary to enable him to assert any right against the vendor, the latter was estopped to deny that such possession had been conveyed.     It was upon this principle that Judge Ruffin held, in *Grist* v. *Hodges*, 3 Dev. (N. C.) 198, 200, that a vendee who had been prevented from taking possession by an adverse holding by the true owner at the date of the conveyance might maintain an action upon the covenant of warranty.     Fully recognizing the doctrine that there must be an actual or constructive ouster, he declared that in such a case, as between grantor and grantee, the law would presume a momentary possession by and an instantaneous ouster of the vendee, for the purpose of enabling him to bring his suit; and this reasoning is highly commended by Rawle.     Rawle on Covenants for Title (4th ed.), 153.     If the law in the interests of the vendee will presume a possession and ouster where the premises are in the actual possession of the true owner, *a fortiori*, in the case of wild-lands, will it, for the protection of the vendor, require a constructive ouster from this presumed possession by

hostile assertion of the paramount title before suit can be instituted upon the covenant. We are not compelled in this State to resort to the Statute of Uses, because by our law livery of seisin was never required, and the possession passes with the deed. Code of 1857, c. 36, § 1, art. 1; Code of 1871, § 2294.

We have not been referred by counsel to any case which announces a different doctrine on the subject under consideration where wild-lands are involved from that which obtains in other cases, nor have our own researches disclosed one. We have found several where the doctrine here announced is declared, though not always, perhaps, upon the same train of reasoning.

In *St. John* v. *Palmer*, 5 Hill (N. Y.), 599, the land was wild. There was a mortgage outstanding which was superior to the title conveyed. The mortgagee foreclosed, making the vendee under the subordinate conveyance a party. There was no actual eviction or ouster; but it was held that the covenantee under the subordinate title might maintain an action against his covenantor to recover the purchase-money, because he had been made a party to the proceedings for foreclosure, and thereby the paramount title had been asserted against him. It was admitted that if this had not been done his action could not have been sustained, although the land was wild, and he had never had any actual possession to surrender.

In *Moore* v. *Vail*, 17 Ill. 185, the premises were unoccupied, and so remained for many years, until at length the true owner entered. A vendee under an imperfect title at once brought suit against his vendor, who had conveyed with general covenant of warranty. The Statute of Limitations was set up as a defence, upon the ground that the breach occurred when the conveyance was executed, and that the statutory period of limitation had intervened before suit brought. It was held that this was not well pleaded; that the covenantee's right to sue had accrued only at the time when the true owner entered.

In *Greenvault* v. *Davis*, 4 Hill (N. Y.), 643, the premises were unoccupied, but yet it was held that the covenantee under the imperfect title only obtained his right to suit against his covenantor by a subsequent entry by the true owner.

In *Loomis* v. *Bedel*, 11 N. H. 74, 82, Tillotson and Eastman, tenants in common, were the true owners of the land, which was a wilderness. Stephenson held a deed from another claimant. No one was in possession. Tillotson died, and his administrator, by order of the proper court, sold at public auction the interest of his intestate in the lands. Stephenson attended the sale, and bought in this interest. About the same time Eastman, the other joint owner of the true title, sold to a stranger. Thereupon Stephenson brought his action against his covenantor as upon an eviction from the whole. It was held that his suit could be maintained as upon an eviction from the undivided moiety which had belonged to Tillotson, because the obtaining by the latter's administrator of leave to sell was an assertion of his intestate's title, and Stephenson had the right to attend the sale and buy it in ; but that as to Eastman's portion he could not recover, it not being shown that Eastman or his vendee had taken any steps to assert his title ; and it was said that the bare fact that Eastman had sold to another was not such hostile assertion of his title as warranted an abandonment by Stephenson, or a suit against his covenantor. This case seems quite decisive of the one at bar, holding, as it does, that even as to wild-lands the right to sue upon the covenants can only be maintained where there is an actual and hostile assertion of the paramount title, and that a conveyance by the true owner to a stranger does not constitute such assertion.

We conclude, therefore, upon reason and authority, that the recovery by the appellee in the case at bar of any thing more than the purchase-money of the quarter-section from which he was evicted, with interest thereon and the costs of defending the former suit, was unwarranted by the facts proved.

*Judgment reversed and case remanded, with leave to have an affirmance on entering a remittitur.*

The counsel for the defendant in error filed a petition for reargument, which was granted.

*Shelton & Shelton*, for the plaintiff in error, filed a written argument, citing,

1. On the effect of the fact that the State was proprietor,

1 Brightly's Dig. p. 492, §§ 201, 202, 204; 31 Miss. 537; 12 S. & M. 478; 8 S. & M. 727, 744; 4 Kent Com. 471; Sedgwick on Damages, 132, 133, 158; Code 1857, p. 386, art. 1, p. 398, art. 1, p. 402, art. 25; 17 Wend. 312; 8 Barb. 190; 21 Wall. 63; 3 Bl. Com. 261; 8 Barb. 194; 1 Bailey (S. C.), 551; 9 Co. Lit. 106 *a;* 3 Cruise Dig. 552; Acts 1854, p. 80.

2. On the admissibility of the records, 1 Greenl. Evid. §§ 195, 196, 527 *a.*

*D. Shelton,* on the same side, argued the case orally.

*Harris & George,* for the defendant in error, filed an extended written argument, citing *Jackson* v. *Dilworth,* 39 Miss. 772; *Schulenberg* v. *Harriman,* 21 Wall. 44, 63, 64; Rawle on Covenants for Title, 254, 255; *Jackson* v. *Vermilyea,* 6 Cow. 677; *Tredwell* v. *Reddick,* 1 Ired. 56; *Ralph* v. *Bayley,* 11 Vt. 521; *Griffith* v. *Schwenderman,* 27 Mo. 412; *Stevens* v. *Hollister,* 18 Vt. 294; Angell on Lim. 387–391.

*J. Z. George,* on the same side, made an oral argument.

CHALMERS, J., delivered the opinion of the court.

The reargument was granted on one point only; namely, conceding that the principles announced in the former opinion were correct, where the paramount title resides in a private person, should a different rule prevail in this case because of the fact that the State was the true owner? The difficulty in the case has been to find any such hostile assertion of the paramount title as might be accepted as tantamount to ouster or eviction, and justify an abandonment by Irving. We thought that the subsequent sales of the land by the State to third persons, who took no steps to assert their newly acquired titles, was not sufficient, because the State, by selling to parties who continued passive, had no more asserted the title in a hostile manner against Irving than while it continued itself the owner.

We remain satisfied that a mere conveyance of the paramount title by the true owner will not ordinarily amount to a sufficient assertion against a vendee holding under a defective title, to justify an abandonment and suit by him on his covenants; but as between private persons we would qualify this doctrine by the remark, that if it is the immediate grantor in

the defective conveyance who has made a subsequent valid conveyance, his vendee under the first deed might abandon and bring suit; and in such case the covenantor would not be allowed to say that there had been no hostile assertion of the true title, because his act would amount to a disaffirmance and annulment of the only title the vendee had. Thus, in the case at bar, if Green had made to Irving an invalid deed, and subsequently had conveyed by proper deed to another, Irving could maintain his suit. Can he do so because Green's vendor has made such conveyance? If Green's vendor were a private person he could not, because such a transaction would be as to him *res inter alios acta*, and could not give him any new rights against Green. But in this case Green's vendor, who had first made an invalid patent to him, and subsequently a valid one in disaffirmance of the first, was the State of Mississippi. Does this change the result? Upon mature reflection we think that it does. Our conclusion is, that wherever the paramount title to land resides in the State, a sale by the State amounts to a hostile assertion of that title against all the world; and that persons in possession under defective titles may at once abandon as upon eviction, and institute suits against their covenantors, even where their own titles are not derived from the State.

Several considerations lead to this conclusion. A sale by the State must be regarded as a hostile assertion against all in possession of its lands, because ordinarily it is the only way in which the State can make it. Its impersonal character renders it impossible for the State to make demand of possession, nor could it be surrendered to it save by leaving the land unoccupied. It has no officer whose duty or right it would be to make such demand or receive possession. If the State can bring an action of ejectment, it would be impossible to execute in its behalf a writ of *habere facias possessionem*. In making a sale, the State declares in the most authentic and public manner that it claims title, and by the act conveys it to a person other than the one in possession. It is not perceived how else the State could assert its title, except by an act of the legislature; and it could not be expected that there should be a legislative act for every separate parcel of State land wrong-

fully occupied by a private individual. When by patent the State conveys title, the act is that of all its citizens ; and all of them, therefore, must be supposed to be aware of it, so far as their rights can be affected thereby. A vendee in possession under an invalid deed may abandon whenever the true owner has said to him, " You are on my land, and I want it." The State must be considered as having said this whenever it makes a sale. It claims the land by making out the patent. It declares that it wants it when it receives the money for it; because, ordinarily, the State has no use for land except to sell it, and can use it in no other way.

These views have special force as applicable to the lands in question. They were a portion of the donation made to the State by the general government for internal improvement purposes. By the terms of the grant from Congress, the State could use them in no other way than by selling them, and devoting the proceeds to the purposes indicated in the act. In a peculiar sense, the State held them for sale, and for no other purpose. A valid assignment of its title to a purchaser was, therefore, if not the only method, certainly the most natural and appropriate one by which it could assert its title ; and of this assertion every occupant of the land must be deemed to have had notice. The point is expressly so ruled in *McGary* v. *Hastings*, 39 Cal. 360, 368, in which it is said that the mere passage of a law making public land liable to entry was such assertion of the title of the government as authorized an abandonment by a vendee under an invalid title. So, also, in *Schulenberg* v. *Harriman*, 21 Wall. 44, 63, 64, it was declared that a sale of land by the government, or even an offer of sale by act of the legislature, would amount to such assertion of the title as would defeat a previous grant on condition subsequent, where the condition had been broken, upon the ground that it was equivalent to actual entry by the government. This, in effect, makes a sale by the State an entry by it, which, of course, is an assertion of the title against whomsoever is in possession.

A change of our views on the question of the hostile assertion of the true title makes it necessary to consider the defence set up under the Statute of Limitations. More than ten years,

it is said, intervened between the time when Green's vendees
took possession of the seven acres of cleared land and the
period at which Irving abandoned; and, as the Statute of Lim-
itations runs against the State, it is insisted that Irving had a
perfect title to the whole tract at the date of his abandonment.
We doubt, under the circumstances of the case, whether the
occupation of the seven acres was of such character as to con-
stitute adverse possession of the whole tract; but another ques-
tion cuts off a consideration of this.   There was no proof in
this case as to the time when Green's vendees took possession
of the seven acres.   Such proof was made in the suit between
Clements (the subsequent patentee of the State) and Green's
vendees; and the record of that litigation was offered by Irving
in this suit, for the purpose of showing eviction thereunder.
Incorporated in the transcript of the record so offered were
the bills of exceptions taken in that case; and these bills did
show when possession was taken.   Irving having offered this
record for the purpose of showing eviction by title paramount,
can Green use the bills of exceptions for the purpose of estab-
lishing an independent fact essential to the defence set up
here?

Manifestly a bill of exceptions is a part of a record for one
purpose only; namely, to certify the facts embodied in them
to the appellate tribunal.   *Robinson* v. *Lane*, 14 S. & M. 161.
It was said, however, in *Shotwell* v. *Hamblin*, 23 Miss. 156,
that where a record containing the bills of exceptions had been
introduced by one party, it was competent for the other party
to refer to and use them.   This is true if the party introduc-
ing the record has himself used the bills of exceptions, but is
clearly unsound if given a broader signification.   In the case at
bar, Irving was compelled to offer the record of the former suit.
In making out that record the clerk improperly embodied the
bills of exceptions.   This gave Green no right to refer to them
unless Irving had done so.   In setting up his defence growing
out of the Statute of Limitations, Green assumed the burden
of proving when his vendees took possession.   He was bound
to establish this by witnesses who could be put to the test of
cross-examination.

When a record of a former trial is offered in evidence, the

bills of exceptions may be referred to for the purpose of showing the character of the action or of the defence, but not as proving the truth of the statements contained in them. They may also be referred to for the purpose of refreshing the memory of a witness as to what transpired on that trial, or what testimony was given therein, but no further. They cannot be made the instruments of proving a fact essential to the case in hand.

    *Judgment of reversal heretofore entered vacated and judgment affirmed.*

    CAMPBELL, J., delivered the following dissenting opinion : —
    I do not concur in the views of the majority of the court as to what constitutes a breach of warranty, as just expressed, but adhere to the opinion first delivered in this case.
    In *Dyer* v. *Britton*, 53 Miss. 270, 277, it is declared to be the result of the decisions in this State that, "in order to sustain an action on the covenant of general warranty, there must be either an actual eviction by judicial process, or a surrender of possession to a valid subsisting paramount legal title, asserted against the covenantee; or that there must be a holding of the grantee out of possession, by such title, so that he could not enter;" and certainly that will be accepted as an accurate statement of the sum of our adjudications on this subject. The principle is that there must be a surrender of possession of the land by the covenantee, or he must be held out of possession, in order to maintain an action on the covenant. A conveyance by the State of land it had once before sold does not in any way affect the possession of the land, nor is a conveyance by the State a hostile assertion of title against the covenantee. It is rather a relinquishment of all claim by the State, and a disabling of itself, to make any hostile assertion of title against the former grantee.
    A conveyance by the State or an individual does not constitute a breach of the covenant of warranty, because it is neither a turning out, nor a holding out, of possession. It in no way affects the rights of the covenantee as to possession. It leaves him just as he was, and it may be that the title acquired by the second conveyance will never be asserted. If

not, he is unaffected. If it shall be, then he may yield to it, and entitle himself to an action on his covenant. The case of *McGary* v. *Hastings*, 39 Cal. 360, is not an authority in point, because, as it shows, a different doctrine as to what is a breach of the covenant of warranty prevails there. It is that a covenantee may yield to a superior title without surrendering possession, — a doctrine I greatly prefer to that which has been firmly established in our State.

I recognize the soundness of the doctrine of *Schulenberg* v. *Harriman*, 21 Wall. 44, but consider the avoidance of a grant for the breach of a condition subsequent as resting on grounds widely different from those necessary to support an action for a breach of a general covenant of warranty.