Clarkson *et al. vs* Morgan's devisees *et al.*   CHANCERY

ERROR TO THE FAYETTE CIRCUIT.                    Case 92.

*Lis pendens purchases.   Parties.   Diligence.   Bills of*
*Review.*

CHIEF JUSTICE EWING delivered the opinion of the Court—Judge   May 2.
Marshall did not sit in this case.

ON the 7th of June 1810, James Morgan and others as   Case stated in
devisees of William Morgan deceased, in conjunction   the bill of Morgan's devisees vs
with Lee and others, claiming the part of Daniel Morgan,   Parker.
under proceedings in bankruptcy, filed their bill in the
Fayette Circuit Court against Alexander Parker, claiming
and setting up the superior equity under an entry in the
name of Wm. Morgan, made on the 25th November 1783,
for 17,604 acres of land lying on Big Bone Lick Creek in
Boone county, surveyed in 1785, and patented the 23d
January 1788, and charging that Alexander Parker had
obtained the elder patent on an entry and survey for 3500
acres, interfering with the claim of the complainants,
and praying that Parker may surrender to them his elder
legal title.

Process was executed on Parker on the day the bill was   Parker's answer.
filed, and on the 22d day of September 1810, he answer-
ed controverting the equity of the complainants, and al-
ledging that on the 12th of March next preceding and be-
fore the institution of the complainants suit *he had sold*
*all his* interest *in the 3500 acres of land to John Fowler*
*without recourse* and *had no interest* from *that time in the*
*same.*

John Fowler was not made a party nor brought before   1st decree of the
the Court but the suit progressed against Parker only.   Circuit Court.
In August 1815, it was heard, and in September of the
same year the Court made a decree granting relief to the
complainants and directing the manner of making the
survey.

Parker appealed to this Court, and the decree of the   Decree of Court
Circuit Court was reversed on the 11th of December 1816,   of Appeals reversing it.
for the reason given, and on the ground that Daniel Mor-

CLARKSON *et al.*
vs
MORGAN'S DEVI-
SEES *et al.*

gan one of the devisees of William Morgan was not a party, nor before the Court, nor had Lee and others who claimed his interest shown that they were entitled to the same, and it being necessary that all who were interested should be parties to the suit, the decree was reversed and cause remanded that the proper parties might be made.

Amended bill filed.

On the 14th February 1817, the opinion of this Court was entered in the Circuit Court, and on the 11th July 1817, the complainants filed their amended bill, in which they alledge that James Morgan one of the complainants had died, without stating when, leaving William and Caroline his only children and heirs, and that the proceedings in bankruptcy, under which Lee &c., claimed Daniel Morgan's interest were irregular, and the title had not passed, but remained with Daniel Morgan, who is alledged to have died leaving William and Daniel Morgan his children and heirs, and they and the heirs of James Morgan are made complainants, the former in the place of Lee &c., as to whom the suit is abated.

Parker's answer.

On the 7th October 1817 Parker answered the amended bill, in which he states that he is ignorant of the matters alledged, and repeats *that he has no interest in the controversy having long since transfered all his interest in the land to John Fowler without recourse.*

On the 8th February 1820, leave was given to amend the bill, by stating Daniel Morgan as heir of Daniel Morgan deceased, instead of James Morgan, which was accordingly done.

2d decree of Circuit Court dismissing complainant's bill.

On the 18th September 1827 the cause was submitted and on the 3d Feb. 1829, a decree rendered dismissing the complainants bill. The complainants prosecuted a writ of error to this Court, but *when,* is not shown in the record, and on the 26th October 1833, the decree of the Circuit Court was reversed, (1 *Dana,* 444.) On the 24th March 1834, the opinion was entered in the Circuit Court, stated in the caption "Morgans devisees *vs* Parkers heirs, and the cause re-docketed.

3d decree of Circuit Court.

On the 25th October 1834, a decree was rendered requiring Richard B. Parker and Mary Crittenden, heirs of Alexander Parker, to convey and release the elder legal title to all the land delineated on the plat, by figures 9, 9,

CLARKSON, et al.
vs
MORGAN'S DEVI-
SEES, et al.

9, 9. On the 10th December 1834 decree amended *nunc pro tunc*, by decreeing that the defendants convey the land described by figures 90, 90, 90, 90, instead of 9, 9, 9, 9; and upon their failure that a commissioner convey. One conveyance having been made by the commisioner and afterwards set aside, on the 11th April 1836, another deed was presented to the Court and approved, by which a conveyance is made of the shares to the other devisees of William Morgan deceased ; but no conveyance is made of the three-sixteenths to the heirs of Daniel Morgan deceased, to which they were entitled. Upon which the Court awards a writ of *habere facias possessionem* to issue after the 1st of January 1837.

On the 18th of May 1837 M. B. Clarkson and others, occupants upon a portion of the land decreed to be released by Parker's heirs, file their bill in the case now before the Court, in the Fayette Circuit Court, in which they allege that they hold separate and distinct parcels, in the County of Boone, designating the parcels and the manner in which they derived title, and exhibiting their titles, and showing that they all had severally derived titles by purchase from John Fowler, or from those who had purchased from him commencing as early as 1810. That having bought and paid for their lands, they entered upon the same, and made thereon lasting and valuable improvements, to the value of not less than $25,000. That at the time they bought and paid for the same, they were wholly ignorant of any adversary claim to their respective tenements, and especially ignorant, respectively, of the claim of the heirs of William Morgan deceased: and of the pendency of the suit of persons styling themselves devisees of said Morgan, against Alexander Parker in this Court. That since they acquired their titles they have been informed that one Humphrey Marshall, who is made a defendant, setting up some claim to the land, had filed a bill in the names of Morgan's pretended devisees against Alexander Parker, for the surrender of Parker's title. That Parker had before the commencement of the suit sold the land to John Fowler, and made a deed which is lost, and both he and Fowler have long since died insol-

*Bill in this case.*

CLARKSON, *et al.*
*vs*
MORGAN'S DEVI-
SEES, *et al.*

vent, but the latter before his death, being no party to the suit, had sold to the complainants.

That they under their purchase from Fowler have had peacable and undisturbed possession of their several parcels of land, for more than twenty years, and have during the said period, from time to time, continued to make lasting and valuable improvements on the same as their own, all of which was well known to said Marshall. And that Marshall *knew* that Parker *had sold* to Fowler before the suit was brought and that *Fowler had sold* and was *selling* to *others* who were *selling* and *improving* the same.

That the suit had been instituted and was prosecuted in Fayette, a county remote from the county in which the land lay, and a decree erroneously obtained, and a writ of *habere facias possessionem* taken out by himself or one John J. Marshall, (who is made a defendant) and placed in th hands of the Sheriff of Boone county to be executed, who was about to turn the complainants out of possession. They insist that they are not *pendente lite* purchasers, but, if they are, then they contend as *privies,* that the decree be opened, examined and reversed for numerous errors, set forth in the proceedings and decree, as rendered against Parker's heirs. And if the decree is not opened, then they claim pay for their improvements.

H. Marshall's answer.

H. Marshall answered on the 18th September, 1837, in which he states that he was to receive one fourth of the land for investigating the claim of Morgan's devisees; that he transferred his contract to J. J. Marshall in 1812, and had no further interest in the matter.

J. J. Marshall's answer.

On the 23d September, 1837, J. J. Marshall answered, contending that the complainants were *pendente lite* purchasers, and bound by the decree, and insisting that Fowler had notice of the suit as early as May, 1811, denies that Fowler had purchased the land prior to the institution of the suit; that he certainly did not receive a conveyance of the land till 1817, and that the complainants are not entitled to pay for improvements, &c. &c. But neither he nor H. Marshall deny that they had *notice* of the *purchase* of the complainants from Fowler, or of their occupancy and continued erection of improvements

upon the lands during the progress of their suit in the name of Morgan's devisees.

Persons claiming to be the devisees of Morgan answer jointly, substantially relying upon the matters relied on by J. J. Marshall, but their answer was sworn to by Jos. Morgan only. An amended bill was afterwards filed, repeating and extending the grounds originally charged, and alledging that Parker, or his heirs, who inherited nothing from their ancestor, were never in possession of the land.

Answers were filed by Marshall and the devisees of Morgan, sworn to by Joseph Morgan only, controverting the matters charged, and a report of Commissioners being made, assessing rents and improvements, the Circuit Court, upon the hearing, dismissed the bill and dissolved the injunction restraining the writ of possession, and the complainants have appealed to this Court.

As the suit was instituted in a *remote county from the land,* against Parker, who was not in possession, for a surrender of the legal title only, to which end the suit, as a transitory action, was proper, and as no claim to the possession was asserted in the original bill, nor adverse possession in fact charged to be in Parker, or asked to be surrendered, it may be questioned whether there was a *lis pendens* as to the *possession,* and especially such *lis pendens* as would justify the summary mode of proceeding by *habere facias possessionem,* to oust the occupants of their possession. In the case of *Worsley* vs *the Earl of Scarborough,* (3 *Atkyns,* 392,) there was a question depending in equity, upon the right to money secured upon an estate, a purchase of the estate pending the suit, was held not to be effectual by the *lis pendens.* Here the question in litigation was as to the *title* only, and to obtain only a *surrender* of the same. The possession was then vacant, and the right to it not claimed by Parker, nor insisted on by Morgan's devisees in their bill.

But there is evidence tending strongly to the conclusion that Fowler had *acquired* the *possession,* claiming the same in his *own right,* before the bill was filed. He certainly, before the bill was filed, claimed and exercised right to the possession, and sold a parcel of the land to James Marshall, one of the complainants, in April before

CLARKSON, *et al.*
*vs*
MORGAN'S DEVISEES, *et al.*

Morgan's devisees' answer.

Decree of the Circuit Court.

Is the pendency of a suit in chancery praying only a relinquishment of title to land, and not a surrender of possessisn such a *lis pendens* as will affect the right of

CLARKSON, *et al.*
*vs*
MORGAN'S DEVI-
SEES, *et al.*

possession of a
purchaser from
the defendant—
Qu.

suit was brought, who must have entered upon the same immediately, and commenced improving, as he actually settled on the land in August next thereafter. And Fowler continued to sell parcels of the land to others, from time to time, and had sold to most of the complainants, or those under whom they claim, and put them in possession before 1814. If Fowler was in possession before the bill of Morgan's devisees was filed, claiming right to the same, whether he claimed under Parker or adverse to him, as he was not a party to the suit, his claim to possession cannot be concluded or affected by the suit, or decree against Parker, nor can any of the occupants who obtained their possession from him, be concluded or affected by the same. He, or those claiming under him, had a right to be *heard* before they could be ousted or divested of their possession derived *before* the suit was instituted.

The principle of *lis pendens* applies only to rights or interests acquired from a *party after* the institution of the suit, and the *possession* and *right* to *protect* the same, is a beneficial interest which cannot be concluded or divested by a proceeding against one for his legal title only, who never had the *actual possession*, and if he had, had placed it in the hands of others, before the suit was instituted.

The doctrine of
*lis pendens* ap-
plies only to
rights or interests
acquired from a
*party* after the
institution of a
suit—possession
and right to pro-
tect the same is
a beneficial in-
terest which
cannot be con-
cluded or divest-
ed by a proceed-
ing against one
for the legal ti-
tle only who ne-
ver had the pos-
session.

If Fowler did not buy from Parker, as stated in the answer of Parker, but entered and placed others in possession in his own right, then Fowler's entry and possession, and the entry of those claiming the possession under him were adverse to both the parties to the suit, and in that aspect of the case, their right to the possession cannot be affected or concluded by the pending controversy between Morgan's devisees and Parker, (2 *Page's Rep.* 255;) (6 *Harris and Johnson*, 21;) *Ringo* vs *Burnes*, (10 *Peters*, 281.)

But waiving these views, there is enough in the record to incline us to the conclusion, that Parker had sold the land to Fowler *before* the suit was instituted. Parker asserts in his answer, upon oath, that he had sold it before, without recourse, and disclaims all interest in the same. It is proven, as has been before stated, that Fowler, in

his own right, had sold to one of the complainants before suit was brought, and continued to sell and convey to others, reciting in the deeds that he purchased from Parker, and in May, 1817, Parker executed to him a deed without recourse.

From these facts evidencing the exercise of ownership by Fowler, commencing before suit was brought, and continued down to the consummation of the contract by deed, with the concession of his purchase and ownership by Parker, in his first answer, and repeated in the second, together with the continued and long undisputed possession by the occupants under Fowler, in one instance commencing before suit was brought, a strong presumption arises that Fowler had purchased before the suit was brought. It does not appear, it is true, what was the character of his purchase, whether in parol or in writing, executed or executory, nor does it matter. The complainants assert that a deed was made which is lost, and from the lapse of time a deed might possibly be presumed. But if the contract was executory, it could not be overreached or concluded by a subsequent suit against Parker, without giving to those who claimed under it a right to be heard. Nor could the rights of Fowler or those claiming under him, be concluded, though the contract had been in parol, the same being consummated by a subsequent deed, as was determined by this Court in the case of *Clary's heirs* vs *Marshall*, (5 *B. Monroe*, 266.) If a right or interest passed from Parker to Fowler, by contract which was obligatory upon the parties, that right or interest cannot be overreached or concluded by a subsequent suit against Parker. But if we are wrong in indulging the presumption that a contract was made before suit was brought, yet we think there is enough in the record to deprive Morgan's devisees of the benefit of the rule applicable to *lis pendens* purchasers.

It is said in *Sugden on Vendors*, 537: "Relief being sought against a *bona fide* purchaser, who bought *pendente lite*, without actual notice, is however, considered a hard case in equity, and although the Court cannot refuse its aid against him, yet the plaintiff is by no means a *favorite*, and therefore, if he make a *slip in his proceed-*

The right of a vendee in possession by executory contract, cannot be affected by a suit afterwards instituted against vendor for a relinquishment of title to which vendee is no party.

CLARKSONS *et al.*
*vs*
MORGAN'S DEVI-
SEES, *et al.*
*ings,* the Court will not assist him to rectify the mis·
take." In 3 *P. Williams,* 482, the same doctrine is as·
serted. And the principle is recognised by this Court in
the case of *Wilson* vs *Watson,* (2 *Dana,* 406.) It has
ever been regarded as a *harsh* and *rigorous* rule in its
operation upon the rights of *bona fide* purchasers. The
rule was dictated by necessity, as indispensible to the
rights of litigants and as the means of terminating lite-
gation about the matter in contest. But being a hard
rule, and operating with great severity in many instances,
upon the rights of innocent purchasers, it should never be
carried in favor of a complainant asking its inforcement,
beyond the purpose and reason of its creation.

To entitle him to enforce it against *bona fide* purchasers

To entitle a par-
ty to an enforce-
ment of the prin-
ciple of *lis pen-
dens* against a
*bona fide* purcha-
ser, he will be
held to show rea-
sonable    dili-
gence in the pro-
secution of his
suit.
he has been held to reasonable diligence in the prosecu-
tion of his suit, and should be guilty of no palpable slips
or gross erregularities in the management of the same, by
which injury may accrue to the rights of others who are
not parties.

Testing the case by the rule thus qualified, we must say,
that there was palpable negligence, in the prosecution
and management of the suit in the case of Morgan's de-
visees against Parker, and many gross erregularities and
palpable slips committed in its management; and by
which injury to the rights of the occupants might and no
doubt must accrue, if the rule be enforced against them.
We will notice only a few of them.

1st. The omission of the complainants to make Fowler

A   failure   to
make the proper
parties to a suit
in chancery, by
which the pro-
ceeding is pro-
tracted   for   a
great length of
time,   may a-
mount to such
negligence    as
will deprive the
party of the ap-
plication of the
principle of *lis
pendens* against
purchasers.
a party, and to bring him before the Court upon Parker's
disclaimer of title, and disclosure of the fact that he had
sold to Fowler without recourse before suit brought, was
a palpable error, as was decided by this Court, at the last
term in the case of *Woods* vs *Foster & Cave,* in accord-
ance with the English practice: *Bishop of Winchester* vs
*Blair,* (3 *Vesey,* 314; 17 *Law Lib.* 101; *Mitford,* 73–5;
10 *Wendall,* 456.) Had Fowler been brought before the
Court, the necessity of resorting to the harsh rule now
insisted on, would have been avoided. The duty of
making him a party was the more imperious, from the
fact that the suit was progressing against one who had
no interest in the defence. Though it is asserted in the

answers of the defendants, that Fowler had notice of the pendency of the suit as early as 1811, we have not been able to discover in the record, that he had notice until 1819, after he had received the deed of 1817, if such notice could have any effect on his or the occupant's rights.

If it be insisted that the omission to make him a party upon the disclosure of his prior interest, in Parker's answer, may not have been made and pressed on the trial in the Court below, nor in this Court, but the hearing permitted to progress on the merits, we say that if this reason be good against the party who was before the Court, and failed to make the objection, it cannot be deemed good against Fowler and others, deriving title from him, who were not parties, and had no opportunity to raise the objection. It is said in *Mitford's Pleadings, page* 73, *side, to p.* 112: the voluntary alienation of property pending a suit by any party to it, is not permitted to affect the rights of other parties, *if the suit proceeds without disclosure of the fact.* If it be conceded that the disclosure of the fact of alienation after suit brought, might not make it necessary to bring the alienee before the Court, nor deprive a complainant of the benefit of the rule against *lis pendens* purchasers, yet we think that the omission to bring him before the Court, upon the disclosure of the fact of alienation without recourse before suit brought, presents at least a persuasive reason against allowing him the benefit of the rule.

2d. Morgan's devisees were guilty of a gross and palpable irregularity and slip in their original bill, in failing to institute the suit in the names of the proper parties as devisees, and failing to bring those who were necessary parties, before the Court, and sueing in the names of Lee and others, who had no interest, and were not *proven* to have any. For this irregularity the suit, upon the hearing, might and should, according to the then practice, have been dismissed without prejudice. Had it been dismissed, the subsequent institution of the suit in the proper names, could not have had the effect to revive and continue in force the dismissed suit, so as to affect the rights of intermediate purchasers.

<div style="margin-left:auto">

CLARKSON *et al.*
*vs*
MORGAN'S DEVISEES *et al.*

The institution of a suit in the name of persons having no interest which might properly have been dismissed, and afterwards introducing the names of those having interest, is such a slip as will not warrant the application of the principle of *lis pendens* to an intermediate purchaser.

</div>

CLARKSON, et al.
*vs*
MORGAN'S DEVI-
SEES, *et al.*

And the Court permitting the amendment by adding the names of the parties having interest, instead of dis-missing the bill without preju-dice, can affect only the parties to the suit, and not third persons or intermediate purchasers.

The privilege allowed by this Court on the reversal of the decree, for the errors alledged, to amend and bring the parties before the Court, was not a matter of right, but of discretionary favor, which though it might be good between the parties to the suit, so far as their interests were concerned, as the means of saving the costs of a new suit, should not perhaps be allowed to affect the interests of intermediate purchasers, who were not parties to the suit, and to whose interests and rights the Court could not look in the exercise of discretion, in allowing the privilege, and especially in a case like the present, when the procras-tination produced by the irregularity, and the indulgence consequent thereon, inflict serious injury on the occupants who are not parties, by depriving them of all means of indemnity from Fowler, their vendor, who died insolvent before the termination of the suit. For it may be re-marked, that before the amendment was made, Fowler had obtained a conveyance of the land, and numerous sales had been previously made, of different parcels, to others who had entered upon the same, and had erected and were erecting, under a claim of right, lasting and valuable improvements, and these facts known to the Marshalls, who had an interest in, and were prosecuting the suit in the names of Morgan's devisees; yet neither they nor Fowler were made parties to the suit on the amended bill, nor brought before the Court, though Par-ker in his answer to the same, repeated his sale to Fow-ler, and again disclaimed all interest in the land.

If these disclosures of outstanding interests, and knowledge of their existence, might not be deemed suffi-cient to protect purchases made after the institution of the amended bill, and during its progress, they at least are deemed abundantly sufficient to protect them, when made during the pendency of the imperfect, and insuffi-cient original. To carry the rule further in favor of the complainants in that suit, would be to carry it beyond the necessity which dictated it, and render it more oppres-sive to *bona fide* purchasers than the reason of the rule, or the necessary or rightful interests of parties to suits demand. The amended bill as to prior alienees, who were never before the Court, must be deemed a new bill.

On the original, a decree could not be properly made. The amendment introduced new parties as complainants and new interests, in the place of other parties and interests, as to whom the suit was abated, and their interest asserted in the original, not only abandoned, but asserted to be in others, who were substituted in their stead.  As upon the bill thus amended, the complainants *obtained* their *decree*, and were alone entitled to it and not entitled to any *decree* upon the original, as it stood before the amendment, the amendment must be taken and regarded, at least as to the rights of prior purchasers, as a new bill, having the effect only to bind and conclude the rights of those as *pendente lite* purchasers, who acquired their rights *after* its institution, and not to have the effect of binding and concluding the rights of those who had acquired their interests before.  By the abatement and abandonment of the suit as to a part of the original joint complainants, and substituting others in their stead, as joint complainants in a joint suit, the original complainants who remained, must be regarded as waiving their former bill and uniting their destiny with others in the new proceeding.

It is said in *Smith's Chancery Practice, 1st vol.* 304, "the amendment of a bill operates in some stages of the suit, as a *waiver* of the *prior proceedings* taken on behalf of the plaintiff, and in others has the effect of depriving the defendant of the power of dismissing the bill for want of prosecution."  So far also as intermediate purchasers are concerned, the amendment in the case before us, must be deemed a virtual waiver of the original.  Again, it is said in the same book, "that the plaintiff, by amending his bill, loses the benefit of all proceedings of contempt, issued against the defendant, either for want of his appearance or his answer, and has the effect of obliging him to begin the same *de novo*; and entitles the defendant to an ex-parte order to be discharged without either payment or tender of costs."  If an amendment is to have the effect to discharge a *party* from contempt, and to compel the plaintiff to commence *de novo*, much more should a material and necessary amendment like the one made by the complainants, in which new joint

CLARKSON, *et al.*
*vs*
MORGAN'S DEVISEES, *et al.*

An amendment of a bill is sometimes a waiver of the benefit of all previous proceedings on the original, so far as third persons are concerned. It will, when new complainants are made, have the effect to relieve a *bona fide* intermediate purchaser from the application of the principle of *lis pendens.*

CLARKSON, et al.
*vs*
MORGAN'S DEVI-
SEES, et al.

complainants and interests are introduced, have the effect to discharge prior *bona fide* purchasers from the operation of the hard rule in question.

It is said, in *Mtiford's Pl.* 400, (*top pa.*) speaking of amendments: "In most of the cases the indulgence given by the Court, is allowed to the mistakes of parties, and with a view to save expense, but when *injury* may arise to *others*, the indulgence has been more rarely granted, and so far as the pendency of a suit can affect others than the parties to the suit, or strangers, *matter* brought into a bill by amendment, *will not have relation* to the time of filing the original, but the suit will be so far considered as pendent only from the time of the amendment."

In the case before us, not only new *matter* has been introduced into the bill, but new *parties* and *interests*, and without whom a decree could not at all have been rightfully taken in favor of the parties who were prosecuting the original suit, *as to any part* of the *land sought to be recovered.*

For any irregularities in a proceeding and decree in a chancery suit authorizing a bill of review in which the interest of third persons are involved, such bill may be prosecuted by such persons.

There are numerous other slips and irregularities in the proceedings, which we will barely mention, without expressing an opinion as to their effect severally or jointly, upon the rights of the occupants; believing, as we do, that those already stated are sufficient to entitle them to relief, barely remarking that for any errors or irregularities in the proceedings or decree, for which a bill of review might be maintained in favor of parties to the suit, a bill in the nature of a bill of review may assuredly be maintained by *pendente lite* or prior purchasers, whose interests are compromitted by the decree.

1st. The decree is rendered against Richard B. Parker and Mary Crittenden as heirs of Alexander Parker, who were never made parties to this suit by revivor, order or service of process. The suit may have been revived against them as the heirs of Alexander Parker in this Court. The revivor does not appear, but if it was made, it has not heretofore been determined by this Court, to be a revivor of the suit in the lower Court; (3 *A. K. Marshall,* 562; 1 *B. Monroe,* 263.

The suit not having been revived against them, there

were no parties as defendants in the subsequent proceed-ings and decree.

CLARKSON, *et al.*
*vs*
MORGAN'S DEVI-
SEES, *et al.*

2d. The decree is in favor of persons who were never made parties to the suit. William Bruce is one of the complainants in the original bill. His death, if he be dead, is not suggested in the record. By the decree as rendered, two-sixteenths of the land is decreed and con-veyed to John and William Bruce who were never made parties by bill or order.

3d. The children of Hannah Bruce, who are tenants in remainder to a portion of the land, as devisees under the will of William Morgan deceased, are not made par-ties, nor is it alledged or shown, that no such persons are in existance or who are entitled to their interest.

4th. It was never suggested or shown that Daniel Mor-gan was dead or that the persons introduced into the bill were his heirs.

Besides great delay is shown in the prosecution of the suit. Though it does not appear in this record when the writ of error was sued out upon the decree of 1829, dis-missing the complainant's bill, it appears that near five years elapsed before that decree was reversed by this Court, and more than five years before the mandate was entered in the lower Court. From the lapse of time that ran after the original decree and before the entry of the mandate, it may be presumed that great delay and negli-gence in the prosecution of the suit occurred.

Upon a full view of the whole case we are entirely sat-isfied, that the complainants ought not to have been concluded by the decree in favor of Morgan's devisees, without a hearing, and that they are entitled to relief against the same, and against the writ of *habere facias possessionem* that was sued out to oust them of their pos-sessions.

The decree of the Circuit Court is, therefore, reversed, and cause remanded that the said writ may be quashed and annulled, and the defendants and all others perpetu-ally enjoined and restrained from disturbing the com-plainants, in the enjoyment of their possessions under the decree as rendered in favor of Morgan's devisees against Parker's heirs. And further that the decree be

Decree and man-date.

opened as to the complainants in this suit, and that Morgan's devisees be allowed to amend their bill if they elect to do so, making the complainants parties and all others that may be necessary, and further proceedings had and taken in said cause.

But as injury may accrue to Morgan's devisees by the death or removal of witnesses, and as the occupants as complainants, are asking the aid of the Chancellor, it is to be understood that the decree is to be opened, upon the terms, only, that the depositions and proofs already taken and now in the cause, shall be read and considered on the future trial of the cause, each party being allowed to retake the depositions, as well as take and introduce any other proofs. We have not deemed it proper now to determine whether the occupants, under the circumstances of this case, will be allowed to rely upon the statute of limitation in their defence to the suit, or if allowed at all, from what time it should commence running, or what period should be counted out in the estimation of time, in their favor. But these questions are left open for future determination, should the question be raised in the defence.

*Loughborough and Johnson* for plaintiffs: *Morehead & Reed, and Harlan & Craddock* for defendants.