CLARA J. BROWN, RESPONDENT, *v.* SALLY ALLEN, AS ADMINISTRATRIX, AND RICHARD M. ALLEN AND JAMES E. ALLEN, AS ADMINISTRATORS OF THE GOODS, CHATTELS AND CREDITS OF EMORY ALLEN, DECEASED, APPELLANTS.

*Eviction — dispossession, essential thereto — application of the rule to wild lands — in the case of the State.*

As a general rule the possession of the grantee, under a conveyance with warranty of title, must be disturbed before an eviction can be established, but in the case of unoccupied or abandoned property this rule, in its full strictness at least, does not apply.

Where a grantee of wild, uninclosed and unimproved land, abandons the property and the possession thereof, and the State becomes the owner of the title to the land by purchasing the same at a tax sale thereof, the State is, under the Forest Preserve act (chap. 283 of 1885), and, by the exercise of the authority conferred upon the Forest Commissioners by the statute, constructively in possession thereof.

APPEAL by the defendants from a judgment, entered in the office of the clerk of the county of Lewis on the 28th day of December, 1889, in favor of the plaintiff, for the sum of $4,330.16, after a trial before the court and a jury at the Lewis County Circuit, at which a verdict in favor of the plaintiff was directed by the court.

*H. W. Bentley* and *E. McCarty,* for the appellants.

*C. D. Adams,* for the respondent.

MERWIN, J. :

This action is brought to recover a balance due upon a bond dated May 24, 1870, executed by Emory Allen and Newton Northam to Marietta L. Brown and assigned by her to the plaintiff on the 2d of January, 1873. It is conditioned for the payment of $2,500 as follows: Five hundred dollars and interest on the first day of January then next; $1,000 on August 1, 1871, and $1,000 on August 1, 1872, with interest. The plaintiff admitted a credit of $1,051.99 as of July 18, 1874, and the judgment is for the balance. Emory Allen died February 26, 1886, and Northam died January 6, 1885. This action was commenced June 19, 1889.

At the date of the bond Marietta L. Brown, the obligee therein,

.and Edward A. Brown, conveyed to Allen and Northam, the obligors, ·certain lands in the town of Greig in the county of Lewis, consisting of six parcels, containing in all $357\frac{14}{100}$ acres, for the consideration as stated in the deed of $3,171.40. The bond in suit and a mortgage upon the premises conveyed were given back for a portion ·of the purchase-money. The deed contains a covenant on the part ·of the grantors "that the premises thus conveyed in the quiet and peaceable possession of the said parties of the second part, their heirs and assigns, they will forever warrant and defend against any person whomsoever lawfully claiming the same, or any part thereof."

The defense in this action is based on this covenant. The claim of the defendants is that at the time of the sale the premises were subject to the lien of taxes previously assessed, by virtue of which, through subsequent sales and conveyances, paramount title was acquired by the purchasers, who took possession, and actually or ·constructively evicted the grantees, Allen and Northam.

The main questions on this appeal are, first, whether the evidence given by defendants showed paramount title; and, second, whether there was actual or constructive eviction. With a view ·of showing paramount title the defendants offered in evidence several deeds from the comptroller of the State to the people of the State, given upon tax sales made in pursuance of the provisions of ·chapter 427 of the Laws of 1855. These deeds covered the premises in question, and had been duly recorded in Lewis county for more than two years. One of them, covering several parcels of the land in question, purported, in substance, to be based on taxes assessed prior to the conveyance to Allen and Northam. It is not clear that the other parcels were sold for such taxes. This, however, is not here important, as the question here is whether the defendants have any remedy as to any part of the premises. The claim of the plaintiff is that these deeds furnished no evidence of the power to sell. The claim of the defendants is that the deeds, presumptively at least, show title in the State. No evidence was given by the plaintiff to the contrary.

By section 65 of the act of 1855, as amended by chapter 209 of 1860, it was provided that such deeds "shall be presumptive evidence that the sale and all proceedings prior thereto, from and including the assessment of the land, and all notices required by law

to be given previous to the expiration of the two years allowed to redeem, were regular according to the provisions of this act, and all laws directing or requiring the same, or in any manner relating thereto." By chapter 448 of the Laws of 1885, the section above referred to was further amended, so far as the county of Lewis and several other named counties were concerned, by providing that all such conveyances, after having been recorded for two years in the office of the clerk of the county in which the lands conveyed thereby are located, "shall, six months after this act takes effect, be conclusive evidence that the sale, and all proceedings prior thereto, from and including the assessment of the land, and all notices required by law to be given previous to the expiration of the two years allowed by law to redeem, were regular and were regularly given, published and served according to the provisions of this act, and all laws directing or requiring the same, or in any manner relating thereto." In *People* v. *Turner* (117 N. Y., 227) it was held, with reference to a comptroller's deed given in 1881, and similar to those given in this case, that the act of 1885 was constitutional, and that the deed was conclusive, even as to an omission of the assessors amounting to a jurisdictional defect (p. 234). In *Wood* v. *Knapp* (100 N. Y., 109) it was held that the burden of proof was upon the party questioning the title of a grantee in a comptroller's deed given under the act of 1855, of showing by affirmative evidence that some material requirement of the statute had been omitted or defectively performed in the proceedings under which the sale was consummated.

We must, therefore, assume, I think, that the defendants made, at least, a *prima facie* showing that the title of Allen and Northam to the premises, or some part of them, was lost by reason of liens prior to the deed to them.

The court below, in ordering a verdict for the plaintiff, held that no sufficient eviction was shown. Was this correct? The deed to Allen and Northam seems not to have been recorded. There is evidence in the case tending to show that after 1871 they never had anything to do with the premises; that in 1874 their agent, upon being applied to by the agent of the plaintiff to have their deed recorded, replied that there was no object in getting the deed recorded, that the title wasn't good as the lands had been sold for taxes. The tax sale was in 1871, and the deed from the comptroller

to the people of the State of 183 acres of the premises is dated February 1, 1875, and recorded May 30, 1877. The other deeds were later. In 1885, by chapter 283 of the Laws of that year, the Forest Commission was created. By section 7 of that act all the lands then owned by the State, or which might thereafter be acquired by it within certain counties, one of which was the county of Lewis, were constituted the " Forest Preserve." The lands so designated were to be kept forever as wild forest lands, and not to be sold or leased except in certain special cases. The care, custody, control and superintendence was given to the Forest Commission, and prosecution for all trespasses or injuries was provided for. The defendant offered to show that the lands in question were included within the Forest Preserve, but this being objected to by the plaintiff was excluded. The report of the Forest Commission, made for the year 1885 to the legislature in pursuance of the act, and which showed that the specific lots in controversy here were included in the Forest Preserve, was also excluded.

As a general rule, the possession of the grantee must be disturbed before there can be an eviction. But in case of unoccupied or abandoned property the rule in its full sense at least does not apply. In regard to such a case it is said, in *St. John* v. *Palmer* (5 Hill, 599), that it is not necessary that the covenantee should be evicted by legal process, it is enough that he has yielded the possession to the rightful owner, or that such owner has entered, the premises being vacant, and taken possession. In that case the premises had been sold upon a decree of foreclosure of a prior mortgage. No actual possession had been taken by the purchaser, but he had, after his title became perfect, offered to sell the premises and had paid taxes. It was said that, as there was no actual possession in any one, no formal act was necessary for the purpose of giving the purchaser the complete enjoyment of his legal rights ; the constructive possession was transferred to the purchaser and he afterwards exercised acts of ownership. It was held that there was such an eviction as amounted to a breach of the covenant. In the same case Judge COWEN was of the opinion that the covenant was broken the moment the title passed to the purchaser on the foreclosure sale, and that an action by the covenantee would lie, although the purchaser had done nothing by way of asserting his

title.   In a similar case (*Wood* v. *Forncrook*, 3 Thomp. & Cook, 303), it is said by MULLIN, P. J.: " The owner of the legal title to uninclosed and uncultivated land is presumed to be in possession, as possession in law follows the title.   To entitle a plaintiff to recover damages for the breach of the covenant for quiet enjoyment an eviction must be proved, or he may, in the event of his title being divested by a superior title, surrender possession to the owner of the superior title or notify his grantor that he relinquishes all claim to said premises, or he may show that the owner of the superior title has offered them for sale."

In the present case the evidence would justify the finding that at or before the acquiring of the title by the State, the grantees, Allen and Northam, abandoned the property and were not from that time in possession.   The lands were apparently wild lands, uninclosed and unimproved.   The State having become the owner of the title, was constructively in possession, and its ownership was publicly asserted by its Forest Preserve act of 1885, and by the acts of its Forest Commission under the authority given by the statute.   The acts of this commission were competent evidence on the subject.   The State, in order to perfect and complete its possessory right, was not bound to seek out and personally notify the prior owners who were not in possession.   Nor were Allen and Northam, or those representing them, in order to perfect their remedy on the covenant, bound to enter into possession and subject themselves to the pains and penalties of trespassers under the Forest Preserve act.   There was, in substance, a surrender to paramount title effectively asserted.

In *Schulenberg* v. *Harriman* (21 Wall., 44) it was held that an act of the legislature directing the possession and appropriation of property, or offering it for sale or settlement, was equivalent to an entry for the purpose of taking advantage of the breach of a condition in a previous grant.

In *McGary* v. *Hastings* (39 Cal., 368) it is, in substance, said that the mere passage of a law making public land liable to entry was such an assertion of the title of the government as authorized an abandonment by a vendee under an invalid title.

In *Green* v. *Irving* (54 Miss., 450; S. C., 28 Am. Rep., 360) it was held that a grant of land by the State, while holding the paramount title, is such hostile assertion of such title as justifies persons

in possession under defective titles in treating it as an eviction, abandoning possession and suing their covenantors. These cases are quite pertinent to the question here. The Forest Preserve act, supplemented by the evidence above referred to as offered and rejected, was sufficient to show a hostile assertion by the State of its title and a constructive eviction under the circumstances of this case.

We are, therefore, of the opinion that the court below erred in holding that there was no eviction sufficient to give the defendants a remedy on the covenant.

The judgment must, therefore, be reversed.

MARTIN, J., concurred; HARDIN, P. J., concurred in the result.

Judgment reversed upon the exceptions and a new trial ordered, with costs to abide the event.