Argued 14 Nov.; decided 19 Dec., 1898; rehearing denied 13 Feb., 1899.

## JENNINGS v. KIERNAN.

[55 Pac. 443; 56 Pac. 72.]

1. PLEADING BREACHES OF COVENANT OF WARRANTY.—In assigning breaches of covenants against incumbrances, of covenants of warranty, and of covenants for quiet enjoyment, the pleader must specify the incumbrance or paramount title which has caused the covenant to be broken, and that an eviction resulted therefrom, but the particulars need not be given; thus, a complaint on a covenant of warranty which sets out the covenant, and alleges that the title is in the United States, that the Secretary of the Interior has withdrawn the lands from entry or sale, that they were unoccupied when the deed was made, that plaintiffs have never occupied them, and that plaintiffs have been thereby evicted, sufficiently pleads a breach of the warranty.

2. EVICTION CONSTITUTING A BREACH OF A COVENANT OF TITLE.—A grantee is evicted, so that there is a breach of the covenant of warranty in his deed, where suit has been commenced by the government to cancel the patent to his grantor and the land has been withdrawn from entry or sale, it being wild and unoccupied. In such a case the possession will presumptively follow the paramount title thus asserted by the government.

3. EFFECT OF DECREE ON PURCHASER PENDENTE LITE.—A judgment or decree is binding on all the litigating parties, and also on all who derive title from them *pendente lite*, whether with notice of the suit or not, subject to the proviso that omitted necessary parties and their privies are not thereby concluded, unless it was impracticable to bring them in: *Houston* v. *Timmerman*, 17 Or. 499, cited.

4. EVIDENCE OF PARAMOUNT TITLE.—In an action for the breach of a covenant of warranty, a decree canceling the government patent in a suit between the United States and the patentee of the lands in question, to which plaintiff's grantor was not a party, though, under a prior contract of purchase, he had taken a deed of the property pending the suit and without knowledge thereof, is not evidence of a paramount title, unless it also appears that the government had no knowledge of the title or interest of such grantor, or that it had some other valid excuse for not making him a party.

From Multnomah : E. D. SHATTUCK, Judge.

Action by I. A. Jennings and W. D. McIntosh against Frank and Agnes Kiernan to recover damages for the breach of a covenant of warranty. Plaintiffs had judgment, and defendants appeal.        REVERSED.

For appellants there was a brief and an oral argument by *Mr. Edward Mendenhall.*

For respondents there was a brief and an oral argument by *Mr. Michael G. Munly.*

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

Action upon a covenant of warranty. The complaint states, in substance, that on July 19, 1893, the defendants, in consideration of $1,200, attempted to convey by deed to plaintiffs certain premises situated in Multnomah County, Oregon, containing eighty acres, which deed contains the following covenant, viz. : "The grantors above named do covenant to and with I. A. Jennings and W. D. McIntosh, the above-named grantees, their heirs and assigns, that the above-granted premises are free from all incumbrances, and that we, our heirs, executors and administrators, shall warrant and forever defend the above-granted premises, and every part and parcel thereof, against the lawful claims and demands of all persons whomsoever ;" that at the time of the execution of said deed, ever since, and now, the title to said land was and is in the United States, and the land itself was and now

is a part of the public domain, and not subject to entry, sale, or disposition, having been withdrawn from such entry or sale by order of the honorable Secretary of the Interior of the United States; that at the date of the execution of said deed it was unoccupied, and that the plaintiffs never occupied said land; that the plaintiffs have thereby been dispossessed of and evicted from said premises, to their damage, etc. This is the state of the complaint after it emerged from the trial, and amendments had been made under permission of the court by interlineation. A demurrer was interposed to the complaint in the first instance, but, an amendment by interlineation having been allowed, another demurrer was interposed, assigning the general ground that the complaint did not state sufficient facts, which was overruled. At the trial another amendment was permitted to be made in like manner by adding the clause touching the occupancy of the lands, and after trial the defendants moved for judgment dismissing the action notwithstanding the findings of the court, for the reason that neither the complaint nor findings are sufficient to support the judgment, in that they do not show a breach of the warranty upon which the action is based, which, being overruled, judgment was rendered in favor of plaintiffs.

1. In order to recover upon a covenant of warranty such as that in the case at bar there must have been an outstanding paramount title at the time of the making of the covenant, and an eviction under such title, either actual or constructive. It is not necessary that the complaint shall set forth the manner of eviction in detail, for that, say the authorities, is the evidence upon which the eviction is to be proven and established. It is sufficient if the existence of the elder title is made to appear, and it is alleged generally that the plaintiff has been evicted by virtue of such title. In other words, the

eviction under paramount title may be set forth as an ultimate fact, without alleging the manner of its accomplishment: *McGary* v. *Hastings*, 39 Cal. 360, 369 (2 Am. Rep. 456). In assigning breaches of the usual covenants accompanying the transfer of lands the general rule is that the pleader may assign them generally, unless such an assignment does not amount to a breach. For instance, as against the covenant of seisin, or that the grantor has good right to convey, it is sufficient to say that he was not seised, or had not good right to convey, for such an allegation necessarily negatives the undertaking of the covenant. But not so as it respects the covenant against incumbrances, the covenant of warranty, and that for quiet enjoyment, as the grantor does not covenant against all possible incumbrances, or all interruptions or claims or ousters, and it therefore becomes necessary to specify the incumbrance or title paramount by reason of which the covenantee or his assigns have been ousted or disturbed in the possession: *Crisfield* v. *Storr*, 36 Md. 129, 148 (11 Am. Rep. 480) ; *Marston* v. *Hobbs*, 2 Mass. 433 (3 Am. Dec. 61). Herein lies the distinction attending the assignment of breaches as it concerns the different kinds of covenants named. And while it is necessary, in alleging a breach of the covenant, to specify the particular paramount title under which the covenantee is evicted, it may be designated in general terms, and that an eviction was had by reason thereof, without attempting to detail the manner of the eviction, or by what particular means it was brought about or accomplished. Hence we think the complaint is sufficient. See *Day* v. *Chism*, 23 U. S. (10 Wheat.) 449 ; *Kellog* v. *Platt*, 33 N. J. Law, 329 ; *Knapp* v. *Marlboro*, 34 Vt. 235.

Trial was had before the court without the intervention of a jury, and findings, among others, were made and filed, in substance, as follows : (1) On July 25, 1866,

congress passed an act entitled "An act granting lands
to aid in the construction of a railroad and telegraph
line from the Central Pacific Railroad Company in Cali-
fornia, to Portland, Oregon," etc., the benefits of which
act were made to inure to the Oregon & California Rail-
road Company.    (2) On May 9, 1871, the United States
patented the lands granted by said act, embracing those
described in the complaint, to the said Oregon & Cali-
fornia Railroad Company, and thereafter said company
claimed to be the owner thereof in fee.    (3) On March
15, 1891, the Oregon & California Railroad Company
bargained and agreed in writing to convey to Frank
Kiernan, one of the defendants, said described lands,
with others, all which were wild and unimproved; and
that neither the plaintiffs nor defendants ever had actual
possession thereof, nor any constructive possession ex-
cept such as would follow from the execution and delivery
of a conveyance therefor by parties claiming the same.
(4) That Kiernan complied with the terms and condi-
tions of his agreement to purchase, and paid the pur-
chase price to the company on January 26, 1893, and on
October 12, 1893, received from said company a duly
executed and acknowledged deed to said lands.    (5, 6)
On July 19, 1893, Kiernan and wife sold and conveyed
said lands by deed with covenant of warranty, as alleged,
to the plaintiffs.    (9) On February 3, 1893, a suit was
commenced in the Circuit Court of the United States for
the District of Oregon by the United States against the
Oregon & California Railroad Company to annul and
cancel the patent theretofore issued to said company
upon the ground that said patent had been erroneously
issued; and, after issue joined and trial had, a decree
was rendered in accordance with the prayer of the com-
plaint on September 9, 1895, and that said cause was

35 OR.—23.

pending on appeal to the United States Circuit Court of Appeals, and was undetermined.* (12) On February 27, 1892, the Commissioner of the General Land Office of the United States, by direction of the honorable Secretary of the Interior, withdrew from entry and settlement the lands patented as aforesaid to the Oregon & California Railroad Company, including the lands described in the complaint; and such withdrawal is still in force. (13) That when Frank Kiernan paid the purchase money to the Oregon & California Railroad Company on January 26, 1893, he had no knowledge of any defect in the title or claim of the United States to said land.

2. From these findings of fact we are to determine whether there has been an ouster or eviction of the defendants under title paramount. And, first, of the ouster or eviction, and then we shall treat of the claim made touching a superior title. To maintain their action it was essential for plaintiffs to prove the eviction, either actual or constructive, by a title better than the one they acquired, and existing anterior thereto. In the constructive sense, a voluntary yielding to a hostile assertion of right under the paramount title will constitute such an ouster or eviction. Such assertion may be by suit or action, but it need not be so, yet it must be of such a nature as is tantamount to a disturbance of the possession, and the yielding must have been superinduced by such claim of right under title paramount. In other words, the surrender to the superior title must be superinduced or brought about by the holder of the better title, and the assertion of it as against the title and possession of the covenantee. The covenant of war-

---

*NOTE.—The court of appeals reversed the circuit court, and such reversal has since been sustained by the supreme court: *United States* v. *Oregon & Cal. R. R. Co.*, 176 U. S. —— (20 Sup. Ct. 261).—REPORTER.

ranty has the quality of transmissibility; in other words, it runs with the land, and the obligation is prospective in its character. Unlike the covenant of seisin or against incumbrances, which is broken instanter with the making if the covenantor is not seised, or an incumbrance exists, the breach occurs only when the paramount title prevails as against the title of the covenantee by encompassing a surrender of the possession. While the paramount title must exist prior and contemporaneously with the making of the covenant, there is no breach until there is a hostile and effective assertion of it. This may be an entry, or the bringing of a suit or action, or there may be an assertion in such a manner and under such circumstances as to induce a well-founded belief that it will be enforced under the menace, to which the covenantee honestly yields.

"When," says DEPUE, J., in *Kellogg* v. *Platt*, 33 N. J. Law, 328, 335, "a paramount title is asserted by such acts, or under the circumstances mentioned, a constructive eviction takes place, and the covenantee may abandon the possession, or purchase in the adverse title, and retain his remedy upon the covenant of warranty." As sustaining this view of the nature of the obligation under the covenant of warranty and the requisites attending its breach, see, also, *McGary* v. *Hastings*, 39 Cal. 360 (2 Am. Rep. 456); *Loomis* v. *Bedel*, 11 N. H. 74; *Claycomb* v. *Munger*, 51 Ill. 373; *Shattuck* v. *Lamb*, 65 N. Y. 499 (22 Am. Rep. 656); *Sprague* v. *Baker*, 17 Mass. 586; *Estabrook* v. *Smith*, 6 Gray, 572 (66 Am. Dec. 445). Accordingly, it is said that a constructive eviction arises "if the land be unoccupied, and remain so after the purchase, when the paramount title is hostilely asserted in some public manner, so as to disturb the constructive possession" (19 Am. & Eng. Enc. Law (1 ed.), 994); such as a sale by the state while holding the paramount title

(*Green* v. *Irving*, 54 Miss. 450, 28 Am. Rep. 360), an appropriation by forest commissioners to be held as a forest preserve under an act of the legislature (*Brown* v. *Allen*, 57 Hun, 219, 10 N. Y. Supp. 714), and the passage of an act by congress granting the right of pre-emption and purchase from the government to certain individuals (*McGary* v. *Hastings*, 39 Cal. 360, 2 Am. Rep. 456). So, in *Kansas Pac. Ry. Co.* v. *Dunmeyer*, 19 Kan. 539, it is held that "Where the title to the land in controversy is in the United States, and liable to entry and settlement under the homestead laws of the government to all who possess the proper qualification, that of itself is such a hostile assertion of the paramount title as will authorize the grantee to voluntarily submit to it." See, also, *Herington* v. *Clark*, 56 Kan. 644 (44 Pac. 624), following the doctrine here enunciated. In the light of these authorities, it is quite clear the act of the honorable Secretary of the Interior in withdrawing these lands, with others, from settlement and purchase by the public, and the subsequent institution of the suit by the United States against the Oregon & California Railroad Company to cancel and annul the patent theretofore issued to it embracing such lands, constituted such a hostile assertion of a paramount title by the general government, conceding it to be paramount for the purposes of the present inquiry, as to justify the plaintiffs in yielding possession ; and, the lands being vacant and unoccupied, constructively the possession followed the paramount title thus asserted (*St. John* v. *Palmer*, 5 Hill, 599), and constituted an eviction of the plaintiffs such as will support the action upon the covenant.

3. We come now to a consideration of the alleged paramount title. The decree entered by the Circuit Court of the United States for the District of Oregon in the case of *United States* v. *Oregon & Cal. R. R. Co.*, 69

Fed. 899, canceling and annulling the patent issued by the government to the railroad company embracing the lands described in the complaint herein, was introduced in evidence, and the lower court found that such a decree was made and entered in said cause, and it is claimed that it is binding upon the defendants as an adjudication establishing the paramount title to said lands in the United States. The decree could not bind the defendants unless they were parties or privies with some of the parties to that suit. But it is further claimed that Kiernan purchased of the railroad company during the pendency of such suit, and that thereby his privity with the defendant in that proceeding is established. The rule of *lis pendens* is said to have been adopted in analogy to the rule in real actions at common law that the judgment would overreach an alienation pending the writ (Beach, Mod. Eq. Jur. § 375), and does not depend upon the equitable doctrine of presumptive notice to the *pendente lite* purchaser, but rests upon the grounds of necessity and public policy. It is of vital and paramount importance that litigation should come to an end, but this desirable result could never be accomplished if parties litigant were permitted to alienate the subject of controversy, and thus defeat the judgment or decree of the court concerning it. Like the pursuit of a will-o'-the wisp, the court would never be able to lay its hand upon the object for which its peculiar functions had been called into exercise, and the chase would prove a bootless task. Hence it is that another presumption is involved,—not that notice has been imparted by reason of relative conditions, but that every man is attentive to what passes in courts of justice in the state or sovereignty in which he resides. "And therefore," says Judge STORY, "a purchase made of property actually in litigation, *pendente lite*, for a valuable consideration, and without any

express or implied notice in point of fact, affects the purchaser in the same manner as if he had such notice, and he will accordingly be bound by the judgment or decree in the suit:" 1 Story, Eq. Jur. § 405. The rule is an inflexible one, arising *ex necessitate,* that parties litigant shall not be allowed to prejudice the rights of their antagonists in the suit or action to the property in dispute, pending the litigation : *Bellamy* v. *Sabine,* 1 De Gex & J. 566. Hence it is that the decision of the court is binding not only upon the parties litigant, but also upon all such as may derive title from them *pendente lite* whether with notice of the suit or not : *Houston* v. *Timmerman,* 17 Or. 499 (4 L. R. A. 716, 11 Am. St. Rep. 848; 21 Pac. 1037) ; *Holbrook* v. *New Jersey Zinc Co.,* 57 N. Y. 616, 627. It is, however, well understood that a decree obtained without the presence of necessary parties is not binding as to them, and, this being so, he who would obtain an effective decree for the purpose of his case must see to it at his peril that they are brought before the court. But he cannot be required to do that which, from the nature of things, is impossible ; as, where a party having an equitable interest in the subject of litigation is unknown to him, or when, with reasonable diligence, he is unable to inform himself in relation thereto, and the circumstances of the case do not charge him with constructive knowledge or notice of such interest. It is plain that in such a case he cannot be required to make the holder of the equity a party to the suit, and serve him, and thereby bind his interest.

4. There is a sharp conflict in the authorities as to whether a deed executed and delivered during the pendency of a suit or action concerning the subject-matter involved in the transfer, in pursuance of a valid contract by which a substantial equity had been antecedently acquired, which remains undisclosed to plaintiff, and of

which he is not chargeable with notice, either actual or
constructive, constitutes an alienation or transfer *pendente
lite*, wherein the judgment or decree finally obtained or
rendered under full prosecution, if adverse to the title
attempted to be conveyed, will bind and preclude the
grantee ; but all the authorities seem to concur in the
proposition that, where the antecedently acquired equity
is of such a nature or character, or has been acquired in
such a manner, that the plaintiff is charged with notice
or knowledge of it, he must make the holder thereof a
party ; and, if he omits to do so, it will be at his peril.
As in *Clarkson* v. *Morgan's Devisees*, 6 B. Mon. 441 ; *Parks*
v. *Jackson,* 11 Wend. 442 (25 Am. Dec. 656) ; *Trimble* v.
*Boothby*, 14 Ohio, 109 (45 Am. Dec. 526) ; and *Gibler*
v. *Trimble*, 14 Ohio, 323,— the owners and holders of
the equitable interest had gone into possession, and had
made improvements, and were in open occupancy of
the premises, at the time of the institution of the suit.
This, it is said, was ample and sufficient to charge the
plaintiff with notice of the equity, and to require him to
make the holder thereof a party to the proceeding, if it
was desired to controvert his apparent right.    Further
than this, it has been held that where, during the pend-
ency of the suit, it was disclosed by the answer that an
antecedently acquired equitable interest was existing and
outstanding in persons not parties, it was thereby made
incumbent on the plaintiff to bring them in if he would
preclude them by the decree :    *Clarkson* v. *Morgan's
Devisees*, 6 B. Mon. 441, and *Haughwout* v. *Murphy*, 21 N.
J. Eq. 118, 122.    If, however, such constructive notice
as possession involves will require the holder of the
equity to be made a party, else the interest will not be
precluded by the decree, it must be conceded that, if
direct or positive notice is imparted to the plaintiff, or
even if he have other constructive notice of equal

strength to that imputed by possession, it will be fully as incumbent upon him to bring in the holder of the equity, otherwise the adjudication will not preclude him. Now, it will be observed that neither the findings in the case at bar nor the evidence, so far as the record dis-, closes, show that the government was without knowledge of Kiernan's equitable interest at the time of the institution of the suit against the Oregon & California Railroad Company, or was not reasonably diligent in the ascertainment of such knowledge, although it is shown that the land was vacant and unoccupied. It may have had, for aught we are advised by the record, very direct and positive notice of such equitable interest of Kiernan, and, if so, he should have been made a party to the suit, and he could not have been otherwise precluded by the decree. The question of Kiernan's privity with the defendant in that suit was a matter incumbent upon the plaintiffs in the case at bar to establish, if they would preclude the defendants by the decree, the record of which was offered in evidence, from asserting that the paramount title is not in the government; and in this they have failed. Kiernan had a substantial and subsisting interest in the premises, acquired, as the findings disclose, without notice of the government's claim ; and he ought not to be precluded from asserting his equity without there is at least some good reason shown why the government was excused from making him a party to its suit to cancel and annul its patent to the company. No attempt has been made to this purpose.

It is insisted, however, that Kiernan's deed was not recorded, and because of that fact *lis pendens* attached as against his purchase. The record does not show the fact, but, conceding it to have existed, the position is untenable under our recording acts. Conveyances are required to be recorded within five days after their exe-

cution and delivery, but, if they are not, they are only void as against *bona fide* purchasers for value : Section 3027, Hill's Ann. Laws.  A subsequent deed, taken with notice of a prior unrecorded one, passes no title whatever :   *Musgrove* v. *Bonser*, 5 Or. 313 (20 Am. Rep. 737). And a judgment lien will not prevail as against a prior unrecorded deed unless it appears that the lien was acquired in good faith, and without knowledge of the prior unrecorded conveyance :   *Baker* v. *Woodward*, 12 Or. 3 (6 Pac. 173).  So, in New York, where a *lis pendens* is required to be filed, it will not avail as against a prior unrecorded deed if filed with knowledge of its existence :   *Lamont* v. *Cheshire*, 65 N. Y. 30.   The authorities cited from North Carolina are not to the purpose, as the statute provides that every person whose conveyance is subsequently executed or registered shall be bound by all proceedings taken after the filing of *lis pendens*, the same as if he were made a party to the action : *Collingwood* v. *Brown*, 106 N. C. 362 (10 S. E. 868); *Williams* v. *Kerr*, 113 N. C. 306 (18 S. E. 501).  So that the plaintiffs here, not having shown that the government. was without knowledge of Kiernan's equity, or his unrecorded deed, they cannot invoke the doctrine of *lis pendens*, and bind the defendants as being in privity with the Oregon & California Railroad Company in the government's suit to cancel said patent. ,

There remains but one other question.   The plaintiffs having failed to establish defendant's privity with the government's suit, the decree therein rendered did not establish a paramount title in the government as against them, and they are free to controvert the allegation of the existence of such title in the present action.   The plaintiffs were required to prove its existence, and this they must have shown independently of the final determination of the federal court.   In short, the decree there

rendered is not evidence of paramount title in the government as against the defendants. They claim to be innocent purchasers for value from the railroad company, which is legitimate matter for controvery, but the findings of the court are not sufficiently full upon this question to determine, as a conclusion of law, whether they were or not. The court has found that Kiernan paid the full purchase price without notice of the government's claim, and also that the deed was executed and delivered in pursuance of the contract; but the nature of the deed is not disclosed, and, for aught that appears, the deed itself may impute such knowledge. Mr. Pomeroy says: "It is only where a party has acquired an equitable estate by means of a conveyance which purported to convey the land itself, and has received the instrument and paid the consideration without notice of a prior claim, that he can, after notice, procure the legal title, and, with it, the protection of a *bona fide* purchaser. Where a party has acquired only an equitable lien or interest, not by conveyance, and has advanced the consideration without notice, he cannot, after notice, get in the legal estate, and thus obtain precedence over a prior equity:" 2 Pomeroy, Eq. Jur. § 756. But, aside from all this, neither the findings of the court nor the evidence contained in the record is sufficient upon which to establish title in the government as against the Kiernans, considered aside, as it must be, from the effect of said decree. The question depends, as we understand it, upon conflicting grants from the government to the Northern Pacific Railroad Company and the Oregon & California Railroad Company, and a subsequent act of congress declaring a forfeiture on the part of the Northern Pacific Railroad Company, and somewhat, it is claimed, upon matters of fact, such as the filing of plats of definite location, and the action of the officers of the general

government, taken with reference to them, and of which we cannot take judicial knowledge : *Oregon & Cal. R. R. Co.* v. *United States*, 23 C. C. A. 15, 77 Fed. 67.* None of these sufficiently appear by the findings of the court upon which to ingraft any conclusion of law as to whether or not the government was the owner of the paramount title to these lands as against the title acquired by Kiernan. Upon this state of the record defendants' motion for judgment notwithstanding the findings of the court was pertinent and well taken, and should have been allowed. The judgment of the court below will therefore be reversed, and the cause remanded for such other proceedings as may seem meet, not inconsistent with this opinion.                                     REVERSED.

Decided 13 February, 1899.

ON PETITION FOR REHEARING.

[56 Pac. 72.]

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

In consideration of the petition for rehearing filed herein, we have carefully re-examined the record of this cause, but find no reason for disturbing the conclusions reached in our former opinon. It is a rule of law that the findings of fact need only cover the issues made by the pleadings. But sometimes it is necessary or convenient, considering the nature of the case, to find facts in detail to support competent allegations of the probative fact. Thus, an averment that plaintiff is the owner in fee simple of a tract of land would be held good pleading touching the fact, and a finding in the same language would be sufficient to support a conclusion of law that he was entitled to recover ; yet the court might extend

---

*NOTE.—This case has finally resulted in favor of the *Oregon & Cal. R. R. Co.*, 176 U. S. ——— (20 Sup. Ct. 261). See, also, *Wilcox* v. *Eastern Or. Land Co.*, 176 U. S. ——— (20 Sup. Ct. 269).—REPORTER.

its findings so as to include the muniments of title, and from whom derived, and, unless these should support the ultimate fact that plaintiff was the owner, he could not recover. So it is with the case at bar. The plaintiffs alleged, in effect, that the paramount title to the premises, touching which the defendants gave their warranty, was in the United States. The court found that the United States had been successful in a suit against Kiernan's grantor to set aside the patent constituting its title, but further found that the defendants in this case were not made parties thereto, and that they purchased said premises in good faith, for value. Now, if Kiernan was a *bona fide* purchaser, his title remained good as against the government, unless it was made to appear that he was in privity with his grantor as it respects the aforesaid suit. The findings of the court do not show such privity, and hence the decree in that suit could not preclude Kiernan from asserting title against the government; and, if he had good title as against it, there was no breach of his warranty. The deduction from the findings is that Kiernan had the superior title, and the court below was wrong when it found as a conclusion of law that plaintiffs were entitled to recover upon the warranty. We should have said, however, in our former opinion, that the findings of the lower court were insufficient to support its judgment, and for that reason the judgment should be reversed, and not have based the reversal, as we did inadvertently, upon the action of the court on the motion for judgment notwithstanding the findings.

REHEARING DENIED.